## Hummel's Estate.   Hummel's Appeal.

161   215|
174   565|
161   215|
177   469|
161   215|
179   448|
161   215|
200   205|
161        215|
202      ¹441|
161        215|
e 31 SC  488|
161        215|
f221      ¹438|

*Decedents' estates—Fraud on rights of wife—Voluntary bond.*

A voluntary bond payable at the maker's death, given for the purpose of defrauding the maker's wife of her rights in his estate, cannot be sustained, where the donee is a party to the fraud.

*Distribution—Marshaling assets.*

Where such a bond has been given to a person who is neither a party nor a privy to the fraud, the bond will be paid out of the personal estate, but the widow is entitled to compensation against the heirs out of the real estate.

Argued Feb. 13, 1894.   Appeal, No. 190, Jan. T., 1890, by Margaret J. Hummel, widow, from decree of O. C. Schuylkill Co., Nov. T., 1893, distributing estate of Charles Hummel, deceased.   Before STERRETT, C. J., GREEN, WILLIAMS, MITCHELL and FELL, JJ.   Reversed.

Exceptions to auditor's report.

From the report of the auditor, James W. Ryan, Esq., it appeared that, on Nov. 4, 1885, decedent executed two promissory notes under seal, one to Annie Riland and the other to Emma Dietrich.   They were the daughters of a deceased sister of decedent's first wife, and had resided with him as members of his family from their childhood till their marriage.   On June 2, 1888, decedent executed three other promissory notes under seal, two of them to nephews, and the other to a niece of the obligor, the three notes being delivered to one of the nephews to be delivered to the other nephew and to the niece after decedent's death; and they were so delivered.   The aggregate amount of these notes was $4,000, and all were made payable after his death.   Decedent was twice married, but left no issue by either wife.   His will, which was probated Oct. 5, 1890, devised to his wife a house " as long as she lives, or as long as she shall bear my name," etc.   The balance of his estate, which was nearly the whole of it, was not disposed of.   His widow refused to accept the provisions of the will.   She, together with two of the collateral heirs, contested the payment of these notes out of decedent's estate.

The auditor found : (1) That the said promissory notes were given by the decedent to evade the payment of the collateral in-

heritance tax to the state, and to deprive the widow of her just share of his estate, " and that none of the obligees were parties to or participated in his illegal purposes." (2) That said notes were founded on a "good " as distinguished from a " valuable" consideration—" what the law defines as voluntary deeds." (3) That there was a delivery of the notes to the several obligees ; and further that the estate of the obligor was liable for their payment after the widow, as against whom the auditor found the notes were void, was first paid her portion of the estate. The personal estate amounted to $4,933.80 ; from this the auditor deducted the costs, $256.83, leaving a balance of $4,676.97 ; deducted widow's share of one half, leaving a balance of personal estate of $2,338.48 ; added real estate fund, $3,057.90, making a balance for distribution, $5,386.39 ; deducted notes, $4,000, leaving balance for distribution among heirs of $1,386.39.

Exceptions to the auditor's report were sustained in an opinion by PERSHING, P. J., who directed payment of the notes out of the personal estate in preference to the widow, and distribution of the fund raised by sale of real estate to the heirs. The sale of the real estate had been made in partition proceedings, and was subject to the widow's dower.

*Errors assigned* were in sustaining exceptions, and in not confirming the original report.

*F. W. Bechtel*, for appellant, cited : Pringle v. Pringle, 59 Pa. 281; Acts of April 8, 1833, P. L. 249 ; April 11, 1848, P. L. 537 ; April 20, 1869, P. L. 77 ; Gallagher's Ap., 76 Pa. 299 ; Parish v. Stone, 14 Pick. 204 ; Chase v. Redding, 13 Gray, 420 ; Evans v. Dravo, 24 Pa. 65 ; Lonsdale's Est., 29 Pa. 407 ; Killinger v. Reidenhauer, 6 S. & R. 533 ; Eshleman's Est., 143 Pa. 24; Candor's Ap., 27 Pa. 119; Mack's Ap., 68 Pa. 231 ; Kirk's Est., 8 W. N. 107 ; Walker v. Dunshee, 38 Pa. 430.

*Guy E. Farquhar*, *W. H. Unger* with him, for appellees, cited : Drennan's Ap., 118 Pa. 176 ; Bierly's Est., 81* Pa. 419 ; Dull's Ap., 108 Pa. 604 ; Malfair's Ap., 110 Pa. 402 ; McConomy v. Reed, 152 Pa. 42 ; Kittel's Est., 156 Pa. 451 ; Trough's Est., 75 Pa. 115 ; Ross's Ap., 127 Pa. 4 ; Campbell's Est., 7

Pa. 100; Waynesburg College's Ap., 111 Pa. 130; Walsh v. Kennedy, 2 W. N. 437; Scott v. Dauman, 104 Pa. 593; Fross & Loomis's Ap., 105 Pa. 267; Dickeschied v. Bank, 28 W. Va. 341; Toner v. Taggart, 5 Bin. 490; Pearsoll v. Chapin, 44 Pa. 9; Negley v. Lindsay, 67 Pa. 217; Seylar v. Carsons, 69 Pa. 81; Waugh v. Beck, 114 Pa. 422; Mack's Ap., 68 Pa. 238; Burkholder v. Plank, 69 Pa. 225; Dickerson's Ap., 115 Pa. 199; Ellmaker v. Ellmaker, 4 Watts, 91; Killinger v. Reidenhauer, 6 S. & R. 535; Mason's Ap., 89 Pa. 402; Pringle v. Pringle, 59 Pa. 281; Lines v. Lines, 142 Pa. 149.

*Nicholas Heblich*, for note holders, filed no paper-book.

OPINION BY MR. CHIEF JUSTICE STERRETT, April 23, 1894:

It is too well settled to admit of any doubt that a voluntary bond payable at the maker's death is, both in law and equity, a gift of the money. It is strictly debitum in presenti solvendum in futuro, and as irrevocable as any other obligation under seal, which imports a consideration: Mack's Appeal, 68 Pa. 231. It must, it is true, be postponed in distribution to creditors, but is good as against the maker, his heirs and legatees: Candor's Appeal, 27 Pa. 119; and if made in good faith, will conclude even his widow: Ross's Appeal, 127 Id. 4.

But fraud will render any transaction voidable at the instance of those who have been defrauded as against those who were parties or privies; and this should be especially true when the fraud is in violation of marital rights. The husband, standing as he does in a relation of contract and confidence, is bound to the exercise of the utmost good faith. He may give away or squander his property and thus reduce himself and wife to poverty, according to the authorities; but no case has gone so far as to sustain a voluntary obligation given and received with intent to defraud the wife's rights. That she has an interest capable of being defrauded was settled in Mack's Appeal, supra. True, until her husband's death, her interest is contingent; but a creditor has only a contingent interest in his debtor's goods, and yet he may be defrauded in respect of that interest; and why not the wife?

It is conceded that the donees in this case were not parties nor privies to the fraud; and consequently the widow can have

no claim as against them ; but she stands in a different relation to the heirs of her deceased husband.   These are but volunteers and can claim no advantage from their ancestor's fraud which he could not have claimed ; while the widow, occupying as she does, in contemplation of law, the position of purchaser, Reed v. Reed, 9 Watts 263, Greiner's Appeal, 103 Pa. 89, has a " higher equity," which gives her a right to compensation out of the estate.

It follows, therefore, that the schedule of distribution report-- ed by the learned auditor is correct, and that the decree of the court below should be reversed.

Decree reversed, with costs to be paid by the appellees ; and it is now adjudged and decreed that the fund be distributed in accordance with the schedule of distribution recommended by the auditor.