## William A. Wagoner's Estate. Appeal of Frances S. Dorlan.

*Gift—Decedent's estate—Delivery of possession.*

A niece kept house for her uncle during the last fifteen years of his life. She did the household work, took care of cows and worked in the garden. About eighteen months before the uncle's death, he called on a justice of the peace and executed a bond in favor of his niece in the sum of $2,000, payable to her absolutely in one year, with interest at the rate of five per cent, to ·which was appended the usual warrant of attorney to confess judgment. The bond was handed to the justice to be kept by him, and

delivered to the niece after the uncle's death. The justice suggested to him that the bond would draw interest during his life, and the uncle directed that the justice should mark the interest as paid at the end of each year from the date of the bond. The justice made one indorsement of the interest having been paid. Some time after the bond had been deposited with the justice the uncle told his niece that "there was a bond of $2,000 at the squire's and that she was to leave it there as long as he lived, and at his death she was to go and get it." A few days after the uncle's death the niece called for the bond, and the justice gave it to her. *Held*, (1) that there was a sufficient delivery to execute the gift to the niece; (2) that the fact that the justice was to indorse the interest paid during the uncle's lifetime was immaterial, inasmuch as it was obviously a plan to correct the mistake in the original draft of the bond; (3) that the contingency that the gift was not to take effect except in case of the survivorship of the niece, did not render it void; (4) that the delivery of the justice to the niece after the uncle's death took effect by relation from the first delivery.

Argued Feb. 12, 1896. Appeal, No. 214, July T., 1895, by Frances S. Dorlan, from decree of O. C. Chester Co., overruling exceptions to auditor's report. Before WILLIAMS, McCOLLUM, MITCHELL, DEAN and FELL, JJ. Reversed.

Exceptions to auditor's report.
The facts appear by the opinion of the Supreme Court.

*Error assigned* was in overruling exceptions to auditor's report.

*Wm. M. Hayes, J. Carroll Hayes* with him, for appellant.— The $2,000 bond was not a mere gratuity but was the evidence of a debt, and the technical rules as to the delivery of a gift have no application to this case: Fleming v. McClain, 13 Pa. 177; Masser v. Bowen, 29 Pa. 128; Huntzinger v. Jones, 60 Pa. 170.

The transaction was not a gift but a trust founded upon a valuable consideration; a contract which the law will enforce. The strict rules as to gifts have no application: Bispham's Equity, 100, 101; Sharpless v. Welsh, 4 Dall. 279; Sheets's Est., 52 Pa. 266; Pierce v. McKeehan, 3 W. & S. 283; Lines v. Lines, 114 Pa. 167; Worth v. Case, 42 N. Y. 362; Stephens v. Rinehart, 72 Pa. 434; 8 Am. & Eng. Ency. of Law, 1318; Rishel v. Crouse, 162 Pa. 7.

It is not now to be doubted that though a parol unexecuted

promise to make a gift inter vivos without consideration is void, an agreement under seal to do so may be enforced as a legal obligation: Yard v. Patton, 13 Pa. 285; Mack's App., 68 Pa. 233; Campbell's Est., 7 Pa. 100; Bond v. Bunting, 78 Pa. 210; Sherk v. Endress, 3 W. & S. 256; Drysdale's App., 14 Pa. 531.

Even if considered as a gift, the bond still should be upheld: Michener v. Dale, 23 Pa. 59.

Delivery may be made either to the donee, or to another person for him: Thornton on Gifts, 139; Wells v. Tucker, 3 Binn. 366; Nicholas v. Adams, 2 Wharton, 17; Barclay's Est., 2 W. N. C. 447.

A bond is the proper subject of a gift: Gourley v. Linsenbigler, 51 Pa. 345; Candor's App., 27 Pa. 120; Hummel's Est., 161 Pa. 217; Thornton on Gifts, 120; 8 Am. & Eng. Ency. of Law, 1336; Book v. Book, 104 Pa. 244.

*Arthur T. Parke*, for appellee.—The findings of the auditor are not to be disturbed except upon very clear proof of mistake: Coulston's Est., 161 Pa. 154.

Wagoner did not give Frances A. Dorlan $2,000 in his lifetime: McCarthy's App., 13 Cent. Rep. 228; Lewis's App., 127 Pa. 133.

To constitute a gift, it must have been consummated by delivery: Trough's Est., 75 Pa. 117; Appeal of Waynesburg College, 111 Pa. 130; Scott v. Lauman, 104 Pa. 593; Withers v. Weaver, 10 Pa. 391; Pringle v. Pringle, 59 Pa. 281; Zimmerman v. Streeper, 75 Pa. 147; Helfenstein's Est., 77 Pa. 328; Scott v. Dickson, 108 Pa. 6.

An express promise cannot be supported by any consideration, wholly past and executed, from which the law could not imply a promise: Fross & Loomis' App., 105 Pa. 267.

The transaction cannot be regarded as a trust: Smith's Est., 144 Pa. 434.

OPINION BY MR. JUSTICE DEAN, March 30, 1896:

William A. Wagoner, on the 1st of April, 1893, being possessed of a considerable estate, both personal and real, died intestate, unmarried and without issue. There were many collateral relatives, among them a niece, Frances S. Dorlan, this appellant. She had lived in the house of her uncle thirty

years; the fifteen preceding his death she was the only member of his family.  During the last years of his life she did the household work and much other, such as taking care of cows, milking, churning, cleaning stables and working the garden. About October, 1891, the decedent called on John H. Skiles, a justice of the peace, and asked him to prepare a deed from him to Frances for thirty-two acres of his land.  Skiles suggested she might not want the land, and that a severance of this quantity might spoil the farm; he designated a will as the best method of carrying out his purpose towards his niece; the uncle said he would think about it, and left.  In about six months he called again on Skiles and executed in favor of his niece a bond dated April 1, 1891, in sum of $2,000, payable to her absolutely in one year, with interest at rate of five per cent, to which was appended the usual warrant of attorney for confession of judgment.  This bond, after formal execution, he handed to 'Squire Skiles to be by him safely kept and delivered to Frances after his death.  Skiles suggested to him that the bond would draw interest during his life, and Wagoner said he, Skiles, should mark the interest as paid on the 1st day of April of each year.  On the 1st day of April, 1892, he did indorse the interest as paid for the preceding year.  Some time after the bond had been deposited with Skiles the uncle told his niece that "there was a bond of $2,000 at 'Squire Skiles, and (she) was to leave it there as long as he lived, and at his death (she) was to go and get it."  In a few days after his death she called for the bond, and Skiles gave it to her.

The administrator having filed his account of the personalty, showing a balance, an auditor was appointed to distribute; the niece presented the bond as a debt against her uncle's estate; the other collateral heirs resisted her claim.  The auditor, on the facts as stated, was of the opinion:

1. There was no actual delivery of the bond to the niece.

2. The deposit of the bond with Skiles was not in trust for her, because the evidence did not show the uncle had parted with his dominion over it.

He, therefore, declined to allow her claim on the bond.  She also, evidently in anticipation of an adverse decision in this particular, made a claim for wages, for six years preceding her uncle's death, on a quantum meruit; this also the auditor dis-

allowed, because, as the evidence showed, she had been regularly paid at the rate of $50.00 per year, and settlements having been made on this basis there was no implied promise to pay more. In this particular, he was clearly right. Having made his report, and exceptions being filed thereto, the orphans' court overruled the exceptions and confirmed the report absolutely. From that decree, we have this appeal. All the errors assigned are resolved by the answer to one question: viz, under the facts, did a right to the bond pass to the niece?

No one will question the correctness, in the abstract, of the legal propositions stated so clearly and concisely by the auditor:

"In all gifts, a delivery of the things given is essential to their validity; for although every other step is taken that is essential to the validity of a gift, if there is no delivery, the gift must fail. Intention cannot supply it; words cannot supply it; actions cannot supply it; it is an indispensable requisite, without which the gift fails, regardless of the consequences:" Thornton on Gifts and Advancements, sec. 131.

"The consummation of every parol gift is delivery. There must be an actual transmutation of possession and property; and the real question in all such cases is whether the donor has parted with his dominion over it:" Thornton on Gifts and Advancements, sec. 134.

On these and like authorities, the auditor concludes there was no gift, for there was no delivery. And as to the argument, that the bond was delivered to Skiles to be by him held in trust for her, the auditor holds:

"Delivery of the property in question, with the intent to give, is absolutely necessary to the validity of the gift. The owner must part with his dominion and control of the thing before the gift can take effect. There must be an actual and positive change of possession. Words of gift are not sufficient. They alone convey no title, and are not the basis of any action:" 8 Am. & Eng. Ency. of Law, 1314, and other authorities to the same point. The auditor then states the question for his decision thus:

"It is clear from the testimony that the money represented by the bond for $2,000 was intended by the decedent to be a gift to Frances S. Dorlan, to take effect after his death. The question here raised, is, whether or not the facts show a sufficient delivery to execute the gift."

It seems to us the undisputed facts found by the auditor do not warrant the inferences drawn from them by him, that the donor had not parted with his control over the bond. Here was an unlearned man disclosing to one assumed by him to be entirely competent to assist him, his purpose to reward his favored niece by an absolute gift of $2,000, of which she was to come into the full enjoyment at his death. No other reasonable inference can be drawn from Skiles' testimony. The donor first wants to make her an absolute deed for part of the farm; he is deterred from doing this because of Skiles' suggestion that it might depreciate the value of the whole farm; his mind then turns to the execution of his purpose by delivering the bond to Skiles for her. Skiles then draws the bond and the donor executes it and places it in Skiles' possession to be handed her after his death. If the evidence had gone no further we think no one could question the creation of a trust in Skiles to be carried into effect on the happening of the contingency, the uncle's death and her survivorship. The uncle placed in the hands of Skiles an obligation for $2,000 to be delivered to the niece at his death, and then notified the beneficiary that he had created the trust and of the terms of it. Equity would not lend its aid in the creation of a voluntary intended trust, but this trust was fully created by the donor; all that remained for equity was to enforce it.

One of the facts from which it is assumed the donor still exercised dominion over the bond is, that he authorized Skiles to indorse the interest paid during his lifetime; but this obviously was the plan suggested by Skiles' mistake in drawing the instrument; instead of expressing in it the intention of the obligor that it should be payable at his death, he made it payable in one year, with interest at 5 per cent; then, the very difficulty raised by his own blunder he mentions to the obligor, viz, that it will bear interest in his lifetime. Wagoner, no wiser than he, then suggests that the mistake of expressing what was not meant could be cured by indorsing on the instrument what was not true, to wit, that he had paid annually the interest. What he did intend he clearly expressed to the scrivener who wrote what he did not intend, and then was adopted a clumsy device to avoid the effect of a scrivener's mistake. But in all this there was no intention to retain control over the gift; only an effort to carry out the intention of the giver.

But did the contingency that the gift was not to take effect except in case of the survivorship of the niece render it void? The gift here was to Skiles as trustee, the trust to be executed by the trustee by delivery to the donee at his death; then the donor informs the niece of the gift, and that at his death she is to go to Skiles and get the bond. The delivery to the trustee for purposes of the trust was absolute; if the niece survived him the bond was to be delivered to her; if the remote contingency that the aged uncle survived the niece happened, doubtless it was his secret intention, if that contingency occurred to him, the bond should be redelivered to him; but he annexed no such reservation to the trust; he retained no such control or dominion over it in the meantime; the death of either determined only the duty of the trustee. A chancellor on Skiles' evidence as to what was said by the donor to him when the bond was put in his possession, and the declaration of the donor to the donee, would have restrained Skiles from delivering it to either during the lifetime of both; and on the death of the niece first, might have ordered its cancellation; but if the uncle died first, would have compelled its delivery to the niece. Skiles testifies he would have given the bond back to Wagoner if he had asked him for it; that is wholly immaterial; Skiles' duty as a trustee is not measured by what he would have done, but by what he ought to have done under the express terms of his trust, with express notice of it to the beneficiary.

The delivery to him was a good delivery to her, as is held in Stephens v. Huss, 54 Pa. 20, and Stephens v. Rhinehart, 72 Pa. 434. In this last case, deeds for lands had been executed by a grantor and delivered to a third party to be by him delivered to the grantees after the grantor's death, and they were so delivered. This court, SHARSWOOD, J., says: " That the delivery of the deed in controversy after the death of the grantor took effect by relation to the first delivery seems a point very well settled by the decided cases." Then is quoted with approval, the opinion in Foster v. Mansfield, 3 Metcalf, 414: " Where the future delivery is to depend upon the payment of money or the performance of some other condition it will be deemed an escrow. Where it is merely to await the lapse of time or the happening of some contingency, and not the performance of any condition, it will be deemed the grantor's deed presently. Still

it will not take effect as a deed until the second delivery, but when thus delivered, it will take effect by relation from the first delivery." And other cases to same effect are cited. There is no distinction in this respect between an instrument constituting the evidence of a gift of land and one evidencing a gift of money. In Hummel's Estate, 161 Pa. 215, the donor delivered to a third party three promissory notes under seal to be delivered to a nephew and niece after his death, all payable after his death. It was held, the present chief justice rendering the opinion, that the delivery was complete as evidence of an existing debt payable in the future, and the gift was irrevocable. In Candor's Appeal, 27 Pa. 119, the decedent executed a bond in $2,000, payable ten years after date, or at his death, to his daughter, and delivered it to a trustee to be handed to her. Although he afterwards undertook to revoke the gift by his will, and died before the expiration of the ten years, this court held the gift irrevocable.

We are clearly of the opinion, that this was an express trust by parol, which took effect as soon as created; the enjoyment of the subject of the trust by the beneficiary could be defeated only on the happening of the one contingency, her death before her uncle's; the subject of it having passed completely out of his control that control could only be resumed by him on the happening of the same contingency; a subsequent event, his survivorship might, through the interposition of equity, restore to him the bond, but a change of intention on his part never could.

The decree of the court below is reversed, and it is directed that the fund be distributed in accordance with this opinion.