202    431
23 SC    ¹557

## Young's Estate.

*Decedent's estates—Widow's election—Agreement of settlement—Estoppel —Fraud.*

A widow is entitled to a full and fair opportunity of examination and information about the estate before she is bound to elect whether to take under the will in preference to her rights under the law, and in such cases perhaps even more strictly than in most others, the rule is applied that fraud vitiates everything it touches. But a settlement made upon full investigation with the assistance of counsel, and benefits acquired under it, is binding and a bar to further claim unless upon the clearest proof that it was procured by fraud,

An executrix cannot be charged by a widow with fraud in not including in an account certain securities, which the executrix claimed as her own property, when this fact was known to the widow, and was taken into consideration in the making of a settlement by which the widow elected to take under the will.

*Gift—Parent and child—Mortgages—Delivery.*

Where a father makes an executed gift by assignment of mortgages to his daughter and afterwards in view of his expression of a wish to revoke the gift the mortgages are held under the joint possession and control of the father and daughter, and at the time of the father's death the assignment of the mortgages was not destroyed or canceled, the title to the mortgages is complete in the daughter.

*Husband and wife—Fraud on wife's rights—Intention.*

A married man's dominion over his personal property, ample as it is, will not sustain a fraudulent gift of it in contemplation of death, or to take effect upon death, to defraud his wife's statutory rights as widow; but the fraudulent intent is the indispensable foundation for any such limitation on his control.

Argued Feb. 17, 1902. Appeal, No. 263, Jan. T., 1901, by

Ella M. Brundage, from decree of O. C. Lebanon Co., June T., 1887, No. 33, overruling exceptions to auditor's report in estate of John Young, deceased. Before McCollum, C. J., Mitchell, Fell, Brown and Potter, JJ. Reversed.

Exception to report of S. P. Light, Esq., auditor.

The important facts are stated in the opinion of the Supreme Court, other facts were found by the auditor as follows:

On March 12, 1887, the petition of Mrs. Young was presented to the orphans' court stating her election to take under the intestate laws and praying for a citation upon the executrix to take and file an appraisement of the estate. Whereupon a citation was awarded. Under the circumstances this repudiation of her agreement was within a reasonable time after ascertaining the facts.

During the course of depositions which were taken in this proceeding, the respective parties with their counsel met at the office of 'Squire Kreider, in 1887. It was suggested by Gen. Gobin, counsel for Mrs. Young, that a settlement or compromise was desirable for all parties. In order to agree upon a basis for compromise, Gen. Gobin and F. M. Brundage, who acted for his wife, went over the assets of the estate. Mr. Brundage contended that the estate was not near what Mrs. Young supposed it to be; Mr. Brundage gave Gobin verbally all that he knew in the estate and Gobin put them down. He, Brundage, had a memorandum with him substantially similar to the one prepared for his wife when she took possession of the assets, if it were not the same one. They went over the various tracts of real estate and each put his own estimate upon them; the two totals were very nearly similar. Gen. Gobin had made a memorandum of the value of the estate from his own researches, has lost his memorandum, but his total of personal and realty at this meeting was from $50,000 to $54,000. This latter figure is substantially the same as the total valuations on Mrs. Brundage's memorandum, including the mortgages which she claimed as her own.

Upon this basis Gen. Gobin suggested the payment of $2,000 in cash to the widow and $450 for his own fee, which was to be paid in addition to the provisions of the will for her benefit and which should be in full settlement of all her claims against the estate.

Upon this basis Gen. Gobin represented to the widow that he thought she was getting one third of the entire estate, the $2,000 then secured being "just that much additional," as he expressed it.  Upon this basis and upon these representations the widow was induced to join in this verbal agreement.  Mrs. Brundage forthwith assigned a mortgage to Gen. Gobin, securing his fee and the widow's $2,000, which was afterwards paid in cash to the widow.

It was verbally agreed that the terms of this agreement should be put in writing and executed by the parties to it, and an agreement was prepared by Mrs. Brundage's attorney, which the widow refused to sign when it was presented to her, claiming it was not what she had agreed to.

The widow on learning that the statements made by F. M. Brundage for the executrix as to the value of the assets of the estate were not true, took steps to assert her rights and repudiated the compromise and verbal agreement within a reasonable time.  On July 8, 1889, the petition of the widow for a citation upon the executrix was presented to the court, upon which after answer filed, the court in September, 1889, directed an account to be filed.  On December 23, 1889, the executrix filed an account to which the widow filed exceptions, and an auditor was appointed to pass on them.

The auditor surcharged the executrix with the sum of $37,110.88 including the mortgages referred to in next paragraph.  The auditor's report was confirmed, and a decree entered that he should make distribution.  In this decree he was authorized to hear additional testimony affecting the question of distribution.  He subsequently filed a second report, the material portions of which were as follows:

John Young, by his indenture, dated August 7, 1885, about eight months before his death, executed and delivered to his daughter, Ella Mr. Brundage, an assignment of certain mortgages, the consideration of which was expressed in the grant as "natural love and affection and the sum of one dollar to him in hand paid."  These mortgages which are claimed by Ella M. Brundage as her individual property as a gift from her father were not included in her account.

The assignment of mortgages was first entered in the recorder's office December 3, 1885, and subsequently, on Janu-

ary 30, 1886, was withdrawn without being recorded, the entry docket showing the following record: " Jan. 30, 1896, I, Ella M. Brundage, do hereby withdraw the above assignment of mortgages and request the record thereof to be cancelled." (signed) " Ella M. Brundage."

Shortly after the death of John Young, on April 19, 1886, the assignment was again entered and recorded in mortgage book W, page 373, etc., and the mortgages mentioned therein have since been held or disposed of by Mrs. Brundage as her individual property. It was contended by the widow that at the time of the withdrawal of the mortgages the original gift of them to Mrs. Brundage was revoked with her consent and that Mr. Young died leaving them an asset of his estate; while on the part of Mrs. Brundage it was claimed that the recording only of the assignment of mortgages was withdrawn and not the gift itself recalled or revoked.

The testimony shows that the assignment itself was returned to Mr. Young at his house after its withdrawal from the record and by him placed in his bureau drawer, to which both Mrs. Young and Mrs. Brundage had access, and some days afterward handed by Mrs. Brundage to J. G. Adams, Esq., the then attorney of the decedent, who placed it in his own private box in the vault of the Lebanon Trust and Safe Deposit Bank for safekeeping, and upon the death of Mr. Young delivered it to Mrs. Brundage, as he (Mr. Adams) testified he was directed to do by Mr. Young in a conversation had with him shortly after their withdrawal. Henry C. Gettel, who was one of the mortgagors included in the assigned mortgages, and a former employee of Mr. Young, testified to a conversation had with him on December 11, 1885, in which Mr. Young told him about the assignment of mortgages and stated that " Ella wouldn't make him any trouble, that it would be the same as if he had it " (referring to the mortgage against him), and also to a conversation had some time during the latter part of January or beginning of February, 1886, in which he (Young) said " that it was all right now, etc., " " the mortgages were either under the estate or under the will, am not positive which."

The conversations had with Mr. Gettel, however, were not in the presence of Mrs. Brundage, and in the opinion of your auditor are incompetent and will therefore be disregarded in

determining the fact to which they relate. However, Mrs. Young testifies to practically the same effect when she says: "He told his daughter in the presence of me and her just a few days or before he died, he said, 'Ella, it is much better that these mortgages are back under the will.'" When Mrs. Brundage was interrogated as to this conversation she admitted that the decedent may have used the words attributed to him by Mrs. Young in her presence. When to this fact is added the possession and control exercised by Mr. Young over these mortgages after their withdrawal, his receipt of the interest paid thereon, together with the acknowledgment of Mrs. Brundage herself as evidenced by her receipts for interest due on some of the asssigned mortgages after their withdrawal, signed "Ella M. Brundage for John Young," the conclusion must be, and your auditor so finds, that the gift of these mortgages was revoked by Mr. Young with the consent of his daughter, Mrs. Brundage, the donee, and that thereafter during the life of Mr. Young were treated as his property both by the donor and donee.

Exceptions to the auditor's report were overruled.

*Error assigned* was in overruling exceptions to auditor's report.

*D. L. Rhone*, with him *J. G. Adams* and *A. R. Brundage*, for appellant.—No judgment of a court of competent jurisdiction can be questioned, in any collateral action or proceeding whatever, by the parties or privies to it: Kean v. McKinsey, 2 Pa. 30; Billings v. Russell, 23 Pa. 189; Yaple v. Titus, 41 Pa. 195; Wood v. Bayard, 63 Pa. 320; 1 Black on Judgments, sec. 278; Berks & Dauphin Turnpike Co. v. Hendel, 11 S. & R. 123.

The widow was not entitled to have any proceeding to rescind the settlement of 1887 until she had returned the consideration paid her: Babcock v. Case, 61 Pa. 431; Bleakley's App., 66 Pa. 187; Hershey v. Weiting, 50 Pa. 244; Lyle v. Shay, 165 Pa. 637; Negley v. Lindsay, 67 Pa. 226; Pearsoll v. Chapin, 44 Pa. 9.

Mrs. Young claims that Gen. Gobin, her attorney, made the settlement without her authority. She, however, accepted the

money under the settlement and retained it, but rejected the terms of the agreement as made by him. She must either accept the agreement as a whole or reject it altogether, and return the benefits derived under it: Mundorff v. Wickersham, 63 Pa. 87 ; Jones v. National Building Assn., 94 Pa. 215 ; Wheeler v. Aughey, 144 Pa. 398 ; Meyerhoff v. Daniels, 173 Pa. 558.

A party seeking to rescind a contract must repay, or tender back what he has received under it: Bird's App., 91 Pa. 68 ; Lyle v. Shay, 165 Pa. 637 ; Guilinger v. Zahniser, 5 Cent. Repr. 303 ; Pittsburg, etc., Turnpike Road Co. v. Com., 2 Watts, 434 ; Miller's Est., 159 Pa. 562 ; Gore v. Kinney, 10 Watts, 139 ; Bell v. Clark, 111 Pa. 94 ; McGrew v. Foster, 113 Pa. 647 ; Peebles v. Reading, 8 S. & R. 484 ; Minsker v. Morrison, 2 Yeates, 344 ; Steigleman v. Jeffries, 1 S. & R. 477.

In the settlement the widow relinquished her claim to the mortgages and obtained the money which she and her counsel at the time considered a fair compromise of the matter, and she cannot now repudiate the contract while holding to the consideration paid therein : Weichardt v. Hook, 83 Pa. 436 ; Beetem v. Burkholder, 69 Pa. 249.

The original gift to the daughter was a valid one.

The gift of the mortgage was not revoked by a decedent before his death : Stephens v. Huss, 54 Pa. 20 ; Stephens v. Rhinehart, 72 Pa. 434.

*P. S. Keiser* and *W. F. Shepherd,* for appellee.—Before making any election the widow was entitled to be fully informed as to the relative values of the interests between which she was to choose, and any choice made by her without that knowledge would not be binding upon her if repudiated within a reasonable time : Woodburn's Estate, 138 Pa. 606 ; Anderson's Appeal, 36 Pa. 496 ; Kreiser's App., 69 Pa. 200 ; Melizet's App., 17 Pa. 455 ; Barry's Est., 13 Phila. 311 ; Cunningham's Est., 137 Pa. 621 ; Cauffman v. Cauffman, 17 S. & R. 21 ; Kennedy v. Johnston, 65 Pa. 455.

The widow did not authorize her attorney to make any statement to be placed on the docket of the orphans' court, but even if she did it would be a matter in pais, and would not be binding upon her, if her consent was procured by the fraudulent statements of the executrix: Mitchell v. Kintzer, 5 Pa. 217 ;

Lockhart v. John, 7 Pa. 127 ; Jackson v. Summerville, 13 Pa. 363 ; Cochran v. Eldridge, 49 Pa. 370 ; Phelps v. Benson, 161 Pa. 418.

Whenever the question of restoration arises it is an equitable question and is to be dealt with on equitable principles. It is only required in order to prevent the party holding the thing paid for and the price also, that a return is essential in equity : Babcock v. Case, 61 Pa. 431; Bleakley's App., 66 Pa. 187 ; Hershey v. Weiting, 50 Pa. 244.

The auditor and the court having found that the mortgages belonged to the testator at the time of his death, their finding is as conclusive as the verdict of a jury.

OPINION BY MR. JUSTICE MITCHELL, May 5, 1902 :

In July, 1886, three months after the death of John Young, a controversy which had arisen between his widow and his daughter (who was executrix and principal devisee) was settled by a formal agreement under seal whereby the widow accepted the provisions of the will, and the annuity provided for her in it was secured expressly as a first charge on the rents of certain specified houses.

Subsequently, although she had in the meantime received and receipted for several instalments of the annuity as due to her " under the will," the widow repudiated the agreement and claimed to take against the will. The auditor held that she could do so, on the ground that she was ignorant of the extent of the estate and was deceived by statements of the executrix and her husband. Upon the evidence we should not have reached that conclusion, but giving her the benefit of the auditor's finding on that point, we come to a more serious impediment.

In March, 1887, she petitioned the orphans' court for a citation to the execurix to file an inventory. The answer of the executrix set up the direction of the will that no inventory should be filed, the agreement of July, 1886, to take under the will, and the conversion by the executrix on the faith of that agreement of a considerable part of the personal estate by investment in new buildings on a vacant lot. Testimony was taken under a rule, and while this was pending the parties came to an agreement, and in November, 1887, the petition

was withdrawn, the court making the formal order of record: " This petition withdrawn in open court by Mr. Gobin, attorney for petitioner, she, the said petitioner having agreed to a settlement of the case and accepted under the will. Permission to withdraw is given.   J. B. McPherson, A. L. J."

It appears by the evidence that this settlement was the result of a detailed examination of the estate, both real and personal, item by item, by the widow's counsel and the husband of the executrix who reached a joint valuation and agreed upon the settlement which in the judgment of her counsel was much more favorable to the widow than the assertion of her legal rights against the will.   By it she remained in possession of the furniture and residence given her by the will, her annuity was secured to her and she received in cash $2,250. She acquiesced in the settlement, accepted the money to which she had no other claim except under it, and the petition was formally withdrawn of record.   With this the matter appeared to be closed, and so remained for more than a year and a half. In July, 1889, however, the widow through new counsel obtained a citation to the executrix to account.   The petition set forth only that she was a widow, that her husband had been dead more than a year, and that the executrix had filed no account.   The answer of the executrix recited the provisions of the will, and the agreement of July, 1886, averring that respondent was advised that petitioner had no further interest in the estate and therefore was not entitled to an account; and further setting up the forcible and illegal breaking of a safe in the decedent's house by the petitioner in the summer of 1886, and the abstraction of papers necessary for respondent to have in order to make an account.   To this the only reply was a formal joinder of issue.   Depositions were taken and the court made the following decree: " The petitioner's annuity of $600 is made payable out of rents and of the interest of certain money.   This entitles her to an account, and her right thereto is not impaired by the agreement which makes the rent of several specified houses " primarily " liable for the annual sum above stated.   But the papers in the petitioner's possession may be needed by the executrix and must be delivered to her.   We therefore order that if the papers belonging to the estate which are now in the petitioner's possession

be delivered to the executrix or to her counsel on or before November 15, the executrix filed her account on or before December 28." This decree will be referred to again in another connection, but it is quoted here as confirmatory of the fact that up to this time whatever the widow's intentions as to the settlement of 1887 may have' been, it had not been directly questioned by her and Judge McPHERSON certainly regarded it as in full force. The contest before him was a claim for an account and a denial that the widow had any further interest in the estate which entitled her to an account. The decree was that she had an interest under the will to see that her annuity was secure, and that having it primarily charged on the rents of certain specified houses did not impair her right to an account for that purpose. There is not a word in the petition or the decree to question the validity of the settlement.

This detailed statement of the facts is made necessary by the different view we take from the auditor and the court below of the inferences to be drawn from them.

A settlement thus made with the assistance of counsel after full investigation, and benefits acquired, accepted and retained under it, is binding, and a complete bar to further claim, unless upon the clearest and most convincing proof that it was procured by fraud. There is no room for question about the law. A widow is entitled to a full and fair opportunity of examination, and information about the estate before she is bound by an election to take under a will in preference to her rights under the law. And in such cases perhaps even more strictly than in most others, the rule is applied that fraud vitiates everything it touches. The auditor enforced it with at least doubtful propriety with regard to the agreement of July, 1886. But that was the utmost extent to which any view of the executrix's conduct should have gone. There is no case nor any principle to justify allowing the widow to play fast and loose, in accordance with her whim or her interest, with the settlement of 1887, to get and keep the advantages under it, and then repudiate it after other rights had been affected or the situation changed in reliance upon her acquiescence. It is not necessary nor desirable to cumber these pages further with the details of the evidence. The auditor bases his finding of fraud

on the part of the executrix to some extent on the undervaluation of the real estate (though he admits that that was a mutual mistake of the parties and the counsel) but chiefly on the failure to include in the account and the suppression of information about certain personal property including a number of mortgages which had formed a large part of the testator's estate. But we do not see any evidence of fraud on the part of the executrix in this connection. The property was not included in the account because the executrix claimed it as her own, and there was no suppression of information because her claim to it was openly made all the time, was well known to the widow and her counsel, was only faintly resisted if not really acquiesced in by them, was a fair subject of compromise, and the evidence tends to show that it was so considered and included in the settlement. Only a harsh view of the executrix's conduct could justify the setting aside of the agreement of 1886 made by the widow herself but as to the settlement of 1887, made by counsel after prolonged examination, acquiesced in, and benefits secured and retained under it, no tenable view brings the evidence anywhere near to the standard required to disturb it.

In the view we take, it is not necessary to discuss the title of Mrs. Brundage to the mortgages at any length. It is sufficient to say that we do not concur in the conclusions reached by the auditor and the court below. The gift by her father to Mrs. Brundage was completely executed, and the title vested in her. It could only be divested by evidence of revocation and redelivery sufficient to prove a gift in the first instance. There was no evidence rising to this standard. The assignment of the mortgages was not destroyed or cancelled, but it and the mortgages themselves were apparently held under the joint possession and control of father and daughter to satisfy various scruples attributed to the former, but without any sufficient evidence that the daughter meant to surrender her whole right and redeliver exclusive possession. Without that there was no executed gift from the daughter which would revest the title in the father.

The auditor and the court below have intimated rather than held that the gift of the mortgages by Young to his daughter, even if not revoked, would be void against the widow as in fraud

of her rights.   It is true that a married man's dominion over his personal property, ample as it is, will not sustain a fraudulent gift of it in contemplation of death or to take effect upon death, to defraud his wife's statutory rights as widow: Lonsdale's Est., 29 Pa. 407 ; Hummel's Est., 161 Pa. 215.   But the fraudulent intent is the indispensable foundation for any such limitation on his control: Pringle v. Pringle, 59 Pa. 281 ; Dickerson's Appeal, 115 Pa. 198 ; and of that there is not a scintilla of evidence in this case.   On the contrary the gift was openly made, his purpose to do something of the kind was indicated in his will made a year and a half before his death, and the subject was freely discussed by him with his wife, according to her own testimony.   Fraudulent intent is not evinced in that way.

The decree for an account made November, 1889, has been quoted, and as already said the ground on which it was based was the widow's interest to see that her annuity under the will was secure.   Nothing in the decree or in the petition on which it was made required an accounting on any other ground.   As soon as that single fact was made apparent, the proceeding should have ended.   The petitioner had no further interest in the estate, and there was no one else demanding account or distribution. Yet this account so ordered for this specific and limited purpose was turned into a general overhauling of the whole administration of the estate, and the establishment of the widow's right to claim against the will as if it had been promptly asserted, and no agreement or settlement stood in the way.   So expanded the inquiry was spun out for more than eleven years. It was a serious perversion of the decree, and a violation of the accountant's rights for which the petitioner must bear the burden.

The decree is reversed and the record remitted with directions to discharge the executrix from any further accounting up to this date.   All costs to be paid by the appellee, Mary Young.