## Estate of John T. Davies, Deceased.

Argued April 29, 1931.

Before Trexler, P. J., Keller, Linn, Gawthrop, Cunningham, Baldrige and Drew, JJ.

*A. Devoe P. Miller,* and with him *W. A. Griffith,* for appellant.

*Harry L. Allshouse,* for appellee.

Opinion by Gawthrop, J., July 8, 1931:

This is an appeal from a decree of the orphans' court of Allegheny County awarding a claim made on a promissory note of the decedent, John T. Davies, who died November 26, 1928, leaving to survive him a widow and six children by a former wife. By his will, dated October 16, 1928, testator gave his widow all his household goods, "together with her legal share and interest in the remainder of my estate." He di-

rected that the residue and remainder of his estate be divided among all his six children, except his daughter, Sarah. As to her he provided: "For reasons that I deem sufficient, I make no provision for my daughter, Sarah Davies, of Wilkinsburg, Pa." At the audit of the estate the daughter, Sarah, presented a claim of $2,000, and interest, on a judgment note for that amount, which was under seal and dated May 24, 1926. The widow objected to the payment of the note on the ground that there was no consideration for the note and that it was given for the purpose of defrauding her of her rights in her husband's estate. She was testator's third wife, whom he married about ten years prior to his death. In June, 1926, he was out of employment and, with the approval of his wife, rented his house in which they had been living. She and her husband visited together for two months. Then he went to the home of his daughter, Sarah, and she went to her daughter's and to the home of some friends until May, 1927. Then they resumed housekeeping in Pittsburgh, where they continued to reside together until his death. At the time of the execution of the note, the testator lived in Wilkinsburg. It was prepared by George G. Shultz, a friend of the testator, who conducted a real estate and insurance business in Wilkinsburg, and was made his executor. Shultz was a witness before the auditing judge. His testimony fully justifies the statement in the opinion of the auditing judge that he undertook to make it appear that the note was given in order to protect testator's estate from any claim of his wife; that, while he showed great willingness to testify as to many conversations in which testator discussed the note, he was not definite as to when these occurred, or who was present. When he was on the stand at the first hearing he said he could not say whether the claimant was present or not when the note was signed, but that she

was there when it was discussed at a later period. At
the second hearing he testified that "there was a con-
versation with me; I am not sure that the daughter
shared in the conversation, but there was conversation
in her presence between Mr. Davies and myself. Q.
Very well, what was it? A. The facts as I recall them
are that the widow had arrived from the south and
was threatening suit for support, and it became a
question with him of removing the assets which she
could not attach, so that she might— Q. She did what?
A. She could not attach them for support." Later on
he testified that shortly after the note was given he
was amazed to see the testator and his wife come into
his office "happy as two on a honeymoon," and that
this relation continued until testator's death. The
testimony of the widow is in conflict with that of
Shultz. She said that they did not separate until
July 26th, and then by agreement. She did not mention
that she ever threatened to sue her husband for sup-
port. It is a significant fact that the note was dated
May 24, 1926, which was two months before the sepa-
ration. The only other testimony against the claim
was that of a woman who lived in the house with the
testator and his daughter during the spring of 1927.
She testified that on several occasions she heard the
testator ask his daughter, Sarah, for the note and that
she refused to give it up, and that once the daughter
said, "that is $2,000 she (referring to her stepmother)
will not get her fingers on." The witness testified
that on another occasion the testator said, "I will fix
you, I will see you don't get anything; I will cut you
out of my will." Claimant testified that this witness
was never present when she and her father talked
about the note.

The auditing judge found that the evidence failed
to establish either want of consideration for the note,
or that it was given for the purpose of defrauding

the widow of her share in her husband's estate. This finding of fact, confirmed by the court *in banc,* based on sufficient evidence, will not be reversed on appeal in the absence of manifest error: Culbertson's Estate, 301 Pa. 438. No such error appears. The note was made and delivered by decedent to claimant more than two and a half years prior to his death. During the entire time claimant had possession and control of the note. The seal on the note imports a consideration: Hummel's Estate, 161 Pa. 215. But no consideration was necessary. The father could make a gift of the note to the daughter and, if he gave it to her and delivered possession, title vested in her, provided collusion to defraud the wife was not established: Potter T. & T. Co. v. Braum, 294 Pa. 482. The power of a husband to dispose of his personal property, by gift or otherwise, during coverture, free from all post-mortem claims thereon by his widow, is well settled: Dickerson's App., 115 Pa. 198, followed in Windolph v. Girard Trust Co., 245 Pa. 349. In view of the finding of the court below, supported by evidence, that there was no fraud in the making and delivery of the note to the claimant, we find no warrant for holding that it is not a valid obligation against the estate of the decedent. It follows that the decree should be affirmed.

The decree is affirmed at the cost of appellant.