Fritz' Estate.

Argued March 7, 1939.

Before KELLER, P. J., CUNNINGHAM, BALDRIGE, STADTFELD, PARKER and RHODES, JJ.

*L. B. Maxwell,* for appellant.

*Lester R. Male,* with him *Clement J. Reap,* for appellees.

OPINION BY PARKER, J., April 21, 1939:

This appeal had its origin in exceptions filed by the

widow to a first and final account of the executrix of decedent in which account credit was claimed for the amount of a note with interest given by Anthony Fritz to his three children. An auditor allowed the claim and that action was sustained by the court below.

The appellant contends that the note was given without consideration, that it cannot be sustained as a valid gift inter vivos because there was not an unconditional delivery of the note, and finally if there was a sufficient delivery of the note, the transaction constituted a fraud on the rights of the appellant as decedent's wife and widow and cannot be used to deprive her of any part of her interest in his estate.

Anthony Fritz died July 7, 1936 survived by his widow, Frances Fritz, and three children by a former marriage, after making his last will and testament wherein he devised and bequeathed one-third of his estate to his widow and the remaining two-thirds to his children and appointed his daughter, Rose Fritz, his executrix. The will and the note in question were at the time of the death of Anthony Fritz in the keeping of C. J. Reap, Esq., and were contained in an envelope indorsed with the notation, "Will of Anthony Fritz and Note to his children. Notify Rose A. Fritz." Mr. Reap had taken over the files of Mr. Mumford, an attorney formerly practicing in the same county and these papers were among those turned over to Mr. Reap. The note was for $1,100 with interest, payable in seven years, but a small piece had been torn from the corner so that only the figures "19—" of the date remained. The note contained a warrant of attorney to confess judgment and was under seal.

It was shown by uncontradicted evidence that the note was actually dated December 23, 1914 and delivered to Rose Fritz, his daughter, one of the payees, on that same day and that Rose Fritz left it with Attorney Mumford.

The will of decedent was not made until February 20, 1925. Anthony Fritz was married to the appellant on December 26, 1914, three days after the note was dated and delivered. He was shown to have assigned as a reason for making the note the fact that he had received $1,100 from his first wife, money which she brought from home when they were married, and that he wished her children to have it.

The seal upon the note imported a consideration *(Hummel's Estate,* 161 Pa. 215, 217, 28 A. 1113; *Mack's Appeal,* 68 Pa. 231; *Estate of John T. Davies,* 102 Pa. Superior Ct. 326, 330, 156 A. 555), but this claim can be sustained as a valid gift inter vivos. The auditor affirmed by the court found as facts that the note was executed by Anthony Fritz on December 23, 1914 and was delivered by him to his daughter, Rose Fritz, one of the payees, that on the same day she placed the note in the custody of Attorney Mumford, now deceased, and that the note and will were at the date of the death of Anthony Fritz in the hands of Clement Reap, Esq., who succeeded to the office of Attorney Mumford. The evidence supporting those findings was not contradicted and was not weakened by cross-examination.

We are mindful of the fact that when a gift inter vivos is to be established against the estate of a dead man, it must be supported by clear and convincing evidence. In *Turner's Estate,* 244 Pa. 568, 572, 90 A. 916, Mr. Justice (later Chief Justice) MOSCHZISKER said: "We have said that after the death of an alleged donor the evidence of a gift inter vivos must be clear and satisfactory, that it must disclose an unmistakable intention on the part of the donor at the time to withdraw or surrender his dominion over the subject of the gift, that it must show unequivocally an intention to invest the donee with the right of disposition beyond the recall of the donor, that the gift must be completed by actual or constructive delivery beyond the power of revocation,

that the intention of the donor must be made manifest and established by clear and precise evidence, and the delivery of the subject of the gift must be as complete as the circumstances permit."

We do not see how the auditor could have come to any other conclusion than he did in holding that a valid gift inter vivos was established. The note was delivered manually to one of the payees and there is not the slightest evidence that any conditions were attached to the delivery. There was nothing to indicate a testamentary disposition or even to show that the gift was to take effect on the donor's death. The note was made payable not at his death but in seven years. He was careful, evidently acting on the advice of counsel, to actually deliver the note to one of the payees. We infer that the note was left with the attorney for safekeeping. There is not the slightest evidence that the maker was under any circumstances to have a right to the possession of the note until it was paid. The indorsement on the envelope containing the note set forth that it was to be delivered to Rose Fritz. While the same envelope contained the will of decedent, that will was dated more than ten years after the date of the note and the same length of time after the note was left by Rose Fritz with Attorney Mumford. The question of delivery was one of fact (*Kanawell v. Miller,* 262 Pa. 9, 14, 104 A. 861; *Kern v. Howell,* 180 Pa. 315, 36 A. 872; *Clymer v. Groff,* 220 Pa. 580, 583, 69 A. 1119), and the fact finding authority has determined that there was a valid gift. Our conclusion that the evidence was sufficient to support a valid gift inter vivos is supported by abundant authority. In fact, the cases go much further than we are required to go under the present state of facts: *Wagoner's Estate,* 174 Pa. 558, 34 A. 114; *Hartman's Estate* (No. 2), 320 Pa. 331, 335, 182 A. 232.

Finally, the appellant says that the delivery of the note constituted a fraud upon her as the wife of decedent.

We do not agree with that contention. It is well settled law in this Commonwealth that a man during his life may dispose of his personal estate by squandering it, by voluntary gift or otherwise as he sees fit and that such action is not a fraud upon the rights of widow or children: *Ellmaker v. Ellmaker,* 4 Watts 89, 91. "As to personal property by gift *inter vivos* his power is absolute. This is perhaps to be regretted, but it is too well settled to be now shaken ...... But in our law no such gift otherwise valid can be impeached as a fraud on a man's wife or children. They have no legal right to any part of his goods, and therefore no fraud can be predicated of any act of the husband or parent to deprive them of the succession": *Pringle v. Pringle,* 59 Pa. 281, 285.

But the precise question has been decided adversely to the appellant in *Windolph v. Girard Trust Co.,* 245 Pa. 349, 91 A. 634, and *Beirne v. Cont.-Equitable T. & Tr. Co.,* 307 Pa. 570, 161 A. 721. In the Windolph case the Supreme Court said: (p. 363-364) "If the gift is absolute and accompanied by a transfer of possession with intent to divest the donor of his ownership, although the obvious effect is to defeat the wife's or children's succession to the property at the donor's death, it is not fraudulent and therefore invalid ...... The 'good faith' required of the donor or settlor in making a valid disposition of his property during life does not refer to the purpose to affect his wife but to the intent to divest himself of the ownership of the property." Even the facts that the donor retained a life estate in the income of the assets conveyed or that he reserved a right to revoke the trust whenever he chose to do so does not in any way affect the matter: *Beirne v. Cont.-Equitable T. & Tr. Co.,* supra. Also see *Lines v. Lines,* 142 Pa. 149, 21 A. 809.

The decree of the court below is affirmed at the cost of the appellant.