. Kirk *v.* Kirk et al., Appellants.

Argued October 4, 1940. Before SCHAFFER, C. J., MAXEY, DREW, LINN, STERN and PATTERSON, JJ.

*Warren H. Van Kirk,* with him *James L. Poth,* for appellants.

*Charles L. Wilmot,* for appellee.

OPINION BY MR. JUSTICE LINN, October 30, 1940:

This appeal is from a decree declaring that a conveyance of real property made by Oliver Kirk to his two sons (children by his first marriage) "is in fraud of the marital rights of Emily A. Kirk, widow of said Oliver Kirk, and is therefore void as to her."

Oliver Kirk, aged 69, married plaintiff, aged 53, on February 16, 1935, having become engaged to her November 20, 1934. He died October 29, 1937. At the time of the engagement Mrs. Kirk knew of Mr. Kirk's ownership of the real estate in question; she did not know, until after the marriage, that on February 13, 1935, three days before the marriage, Mr. Kirk conveyed the property to his two sons. One of them drew the deed which stated the consideration to be "natural love and affection." The court held that a voluntary conveyance by a party to a marriage treaty "is prima facie in fraud of the marital rights of the other party to the treaty," and as "The only consideration was natural love and affection, and as defendants have failed to meet the burden cast upon them of showing that the conveyance was made with the knowledge of the plaintiff, it must be held to have been in fraud of her marital rights." The decree is founded on two facts: 1, that the conveyance was voluntary and, 2, that plaintiff did not know of it; that those facts established the fraud for which the conveyance was set aside.

The learned court relied on *Duncan's Appeal,* 43 Pa. 67 (1862); *Robinson v. Buck,* 71 Pa. 386 (1872), and *Baird v. Stearne,* 15 Phila. 339 (1882).[1] The first two were proceedings by husbands to set aside conveyances by women to whom they were respectively engaged. *Baird v. Stearne* was a proceeding by the widow who "during the courtship had been made acquainted with his circumstances and . . . at the time of her marriage . . . was entirely ignorant of this secret conveyance." The rule applied in those cases was stated

---

[1] *Belt v. Ferguson,* 3 Grant 289 (1859), was a similar proceeding; a short opinion states that the wife "does not insist on it."

by LOWRIE, C. J., in *Duncan's Appeal,* supra, in these words: "We feel very sure that no fraud was intended here, and very probably the arrangement was very discreet and prudent; but it was very improper to make it without the consent of the intended husband. Common candour forbids that so important a change in his intended wife's circumstances, and in her power over her estate, should be made without his consent, and equity sternly condemns it as a fraud upon his just expectations. . . ." In that case the transfer set aside was of real and personal property although in the other two, real estate only was conveyed.

The principle applied was that the fact of conveyance, by one of the parties to a treaty of marriage without the knowledge of the other, was evidence of fraud, sufficient, unless rebutted, to avoid the conveyance. This doctrine was first announced in England where it was applied to transfers by the intended wife which would defeat the husband's absolute right to her personalty and his vested interest in her real estate at common law as an incident of marriage.[2] It is not the law today as declared in cases to which we shall refer.

---

[2] The English cases dealing with the subject go back at least as far as *Howard v. Hooker,* 2 Chan. Rep. 81, 21 Eng. Reprints 622 (Ch. 1673), a case involving actual fraud in a marriage settlement. BULLER, J., required proof of actual fraud in *Countess of Strathmore v. Bowes,* 2 Cox 28, 30 Eng. Reprints 14, 1 Ves. Jr. 22, 30 Eng. Reprints 211 (Ch. 1789), affirmed 6 Brown 427, 2 Eng. Reprints 1178 (H. L. 1797), and Lord ELDON in *DeManneville v. Crompton,* 1 V. & B. 354, 35 Eng. Reprints 138 (Ch. 1813). Later, *Taylor v. Pugh,* 1 Hare 608, 66 Eng. Reprints 1173 (Ch. 1842), held that proof of a secret conveyance on the eve of marriage was sufficient to make out a prima facie case; see also 1 Roper, Real Property (1824) 159 et seq. The doctrine, based on the husband's common law interests in his wife's property, was applied only to antenuptial transfers by the woman and not to transfers by the intended husband. See *M'Keogh v. M'Keogh,* 4 Irish Rep., Equity, 338, 346 (Ch. 1840); 1 Roper, Real Property with Jacob's Notes (2d ed. 1841) 354, note u, 32 Law Library 215. It was also held that the doctrine had no application subsequent to the Married Women's Property Act. *Lyon v. Lyon's Trustee,* 3 Ct. of Session Cases 653 (Scotland 1901); see 2 Vaizey, Settlements (1887) 1585.

The Married Women's Property Act of 1893, P. L. 344, as amended, 48 PS Sec. 31 et seq., has made a married woman's capacity general; with slight exception, she may now contract and dispose of her property as freely as the husband may. Spouses have reciprocal rights in each other's estates.

The modern rule as to personal property has been considered in a number of cases. It was discussed at length in *Beirne v. Continental-Equitable Trust Co.*, 307 Pa. 570, 161 A. 721 (1932). In that case a bill was filed by a widow to set aside a deed of trust of personal property made by her husband in his lifetime. The settlor was advised by his counsel that he "could give away his property, could make any disposition he liked of his personal property and that he was not defrauding his wife of any rights"; the settlor executed the deed of trust with the "declared purpose to eliminate his wife" from any interest in the assets conveyed by the deed. The opinion states at p. 575: "There was no other evidence in any way antagonizing the validity of the trust, but the testimony showed also that, from the day the deed was executed, defendant had exclusive control of the assets specified in it." SIMPSON, J., also said at p. 577: "In the cases first above cited, and the others in their train, the question of the husband's or wife's intent to commit an actual fraud on the other spouse was not considered, perhaps was not attempted to be shown. In the later authorities, now to be reviewed, however, it is treated as the vital factor, and if actual fraud upon the other spouse is shown to have been the real cause of the transfer of the assets, the general rule is applied, as in other cases of actual fraud, and the conveyance is held void. Thus in *Hummel's Est.*, 161 Pa. 215, 217, it is said the husband 'may give away or squander his property and thus reduce himself and wife to poverty, according to the authorities; but no case has gone so far as to sustain a voluntary obligation given and received with intent to defraud the wife's rights.' See also *Young's Est.*, 202 Pa. 431; *Waterhouse v. Wa-*

*terhouse,* 206 Pa. 433; *Dillen v. Dillen,* 221 Pa. 435, 437-8; *Armstrong v. Connelly,* 299 Pa. 51. 'But the fraudulent intent is the indispensable foundation for any such limitation of his control' *(Young's Est.,* 202 Pa. 431, 441; *Windolph v. Girard Trust Co.,* 245 Pa. 349, 363), and this is not shown merely by proving that 'the husband's intent [was] to deprive the wife of her distributive share in his estate as widow' *(Windolph v. Girard Trust Co.,* supra, page 364; *Potter Title & Trust Co. v. Braum,* 294 Pa. 482, 485); nor, as we have already shown, does the fact that he retained a life estate in the income of the assets conveyed, or that he reserved a right to revoke the trust whenever he chose to do so, in any way affect the matter." The rule was also applied recently in *Howard v. Flanigan,* 320 Pa. 569, 184 A. 34; *DeNoble v. DeNoble,* 331 Pa. 273, 200 A. 77, and in *Fritz's Estate,* 135 Pa. Superior Ct. 463, 5 A. 2d 601, a case which involved delivery of personal property three days before marriage.

Under modern statutes, a wife still has a contingent interest in her husband's real estate similar to inchoate dower at common law. It was an interest which the English courts considered too remote for antenuptial protection; it cannot be asserted against the husband's creditors and vests only if the wife survives; it is not, in short, such a present and certain interest as, under the English cases,[3] would ordinarily constitute the consideration for marital obligations. There is no valid reason, therefore, why the rule of presumed fraud should apply to antenuptial conveyances of real estate any more than it can apply to gifts of personalty as to which it has been rejected.

Either spouse may challenge, as fraudulent, a conveyance of real estate or a gift of personal property made during a treaty of marriage, but mere proof of

---

[3] See *Countess of Strathmore v. Bowes,* 1 Ves. Jr. 22, 28, 30 Eng. Reprints 211, 214 (Ch. 1789).

the conveyance or gift, without the knowledge of the other party, does not constitute a prima facie case of fraudulent transfer.[4] In addition, it is necessary for the party alleging it to prove the fraud, or "actual fraud," to use an expression common in the decisions. Mere conjecture or suspicion does not take the place of evidence. We can therefore not sustain the decision that proof of the conveyance without plaintiff's knowledge entitled her to a decree.

There is evidence that the grantees, for years prior to 1929, contributed funds to their parents which went to the maintenance of the house conveyed, and that Mr. Kirk, dying intestate, left other property, though its value does not fully appear. The order we shall make will afford opportunity to the parties to amplify these facts, if possible, by additional evidence, and also to produce any other competent evidence that may be available. For example, can it be shown that Mr. Kirk made any representation to plaintiff of his existing property, what the representation was, and whether it was relied on? Did he, in making the conveyance, intend to satisfy an existing obligation to his grantees (compare *Sutch's Estate (No. 1)*, 201 Pa. 305, 50 A. 943) in circumstances in which the effect on his intended wife's future rights in this property would, in a legal sense, be only incidental? Compare *Ross's Appeal*, 127 Pa. 4, 17 A. 682. Or, did he make the conveyance, not to satisfy a bona fide obligation, but with the intention of depriving her of rights which, expressly or by implication, he induced her to believe she would receive by marrying him? We are not attempting to limit or define the scope of the inquiry but merely to illustrate its general nature.

The second, third, fourth and fifth assignments of error are sustained.

The decree is reversed and a new trial is awarded; costs to abide the event.

---

[4] Compare *Harlan v. Maglaughlin,* 90 Pa. 293.