The Peach Bottom Railway Co. *v.* John McAlister,
Appellant.

*Land damage—Notice of proceedings—Actual knowledge—Estoppel.*

The purpose of giving the landowner notice of the time and place of
meeting of the viewers, is to enable him properly to present the case before
that tribunal, and if he has actual knowledge of the facts for which the
notice is intended to inform him, he is bound by the report of viewers
after the lapse of many years of silence.

The appointment of viewers and proceedings thereunder will not be set
aside after many years' occupancy of the land by a railroad, upon allega-
tion of the landowner who denies that a person duly served with notice as
his agent was such in fact, but fails to aver that he did not acquire actual
knowledge of the proceedings and the occupancy by the railroad there-
under which was open, notorious and conspicuous in its nature.

Submitted March 11, 1898.   Appeal, No. 53, March T., 1898,
by defendant, from order of C. P. York Co., Aug. T., 1873,
No. 77, dismissing petition setting aside appointment of view-
ers and proceedings thereunder.   Before RICE, P. J., WICK-
HAM, BEAVER, REEDER, ORLADY, SMITH and PORTER, JJ.
Affirmed.

Petition to set aside appointment of viewers and all pro-
ceedings thereunder and for the appointment of new viewers
to assess damages, etc.   Before BITTENGER, P. J.

The facts sufficiently appear in the opinion of the court.

The court below dismissed the petition at the cost of the
petitioner.   Defendant appealed.

*Error assigned* was dismissing the appellant's petition and
directing him to pay costs.

*James B. Ziegler* and *John H. Osmer & Sons,* for appellant.
—The record shows affirmatively that such personal notice as
is contemplated and required by the act of assembly was not
given to defendant, and it is submitted that even though a
service of such notice upon the agent of the party might be
held to be sufficient under the said act of assembly, the alleged
service of notice in this case was illegal and void for the rea-
son that there was no service upon the agent personally as
such agent.

The general statutory proceeding to assess damages for property taken, injured or destroyed in the exercise of the right of eminent domain, is not within the purview of the general statute of limitations: Keller v. Railroad Co., 151 Pa. 67.

*Henry C. Niles* and *George E. Neff*, for appellee.—The petitioner was in the same position as if he had come into court with a petition asserting that he had lawfully conveyed to the railroad company the right to run its tracks across his land, and yet asking that a jury be impaneled to fix the amount due him for something he had already given away.

This view is entirely in accordance with authorities like Forster v. Cumberland Valley R. R. Co., 23 Pa. 371, and is not in conflict with the cases referred to in the court's opinion and the appellant's argument.

If the company had filed a bond to pay damages thereafter to be ascertained, its entry would not have been adverse, but in full harmony with the understanding that whenever a party in interest might move, no matter how many years after, viewers might be appointed and the company or its successors be bound to pay the damages fixed by them.

The present case is a very different one and seems to be the state of facts intended to be differentiated in the opinion of Chief Justice STERRETT in Keller v. Harrisburg & Potomac R. R. Co., 151 Pa. 67.

OPINION BY ORLADY, J., July 29, 1898:

On May 12, 1873, The Peach Bottom Railway Company presented its petition under the provisions of section 2 of the Act of February 19, 1849, P. L. 79, and prayed for the appointment of viewers to assess the damages sustained by John McAlister, a landowner, through whose property the corporation intended to locate and construct a railroad.

The bond required by the statute was approved and filed in the court and viewers were then appointed. The notice to the landowner of the time and place of meeting of the viewers was served upon Morgan McDonald, the reputed agent of John McAlister. On July 12, 1873, the report of the viewers was filed, and they returned that John McAlister did not sustain any damage by reason of the location and construction of the rail-

road, which report was regularly confirmed so as to be marked absolute.

On December 28, 1896, John McAlister presented his petition to the court in which the whole proceedings are recited, and averred that Morgan McDonald " had no authority whatever from him to act as his agent or in any other capacity in regard to or concerning the land taken and occupied by the railroad company," and that the report of viewers, " fails to show that notice was given to him of the time and place of the meeting of said viewers," and he prayed that the proceeding should be set aside. An answer was filed reciting, inter alia, " 2. At the time of the service of the notice referred to in said petition, to wit: June 12, 1873, Morgan McDonald was the agent of the said John McAlister and had charge of and control over said lands. 3. Immediately after the confirmation of the report of the viewers by the court, the said Peach Bottom Railway Company occupied and took possession of the land described in said petition and thereon constructed a railroad. The said John McAlister was well acquainted with the facts of said occupation and construction of said road, and has been informed thereof constantly from that time until this. That the railroad so constructed has been continuously operated and the parties have maintained continuous, adverse and notorious possession and control since July 12, 1873."

In support of the answer, depositions were taken and proof adduced to show that in 1872 McAlister directed the president of the railroad company to give any notices he was to receive to his agent McDonald, who attended to his business about the land in his absence.

McAlister resided in western Pennsylvania but was frequently in the neighborhood of his York county land after 1873. Neither McAlister nor McDonald were examined as witnesses and in the petition McAlister does not say that he did not receive the notice served on McDonald, or that he did not have actual knowledge of the construction and operation of the railroad on his farm for the twenty-three years preceding the presenting of his petition to set aside these proceedings.

After a hearing in the court below the rule was discharged and an appeal was taken to that decree. The purpose of giving the landowner notice of the time and place of meeting of

the viewers is to enable him to properly present the case before that tribunal, and if he has actual knowledge of the facts for which the notice is intended to inform him, he is bound by the report of viewers after the lapse of many years of silence. It was his duty to take an appeal if the return of the viewers was not satisfactory to him. The passing of time necessarily implies the death or removal of important witnesses and change of ownership of the property, so that when an appeal is provided by the statute it should be taken within the time fixed—if the landowner had notice of the proceeding—and if he had no notice of the time and place of meeting of the viewers or of the filing of their report, then within a reasonable time after having knowledge of the fact.

The first question to be decided is, did John McAllister have notice of the time and place of the meeting of the viewers. He avoids giving information on this subject, and if he received the notice which was left with the McDonald family for him it would be immaterial whether it was delivered to him personally by an officer of the company or not. He was entitled to full notice of every step in the proceeding and to a faithful observance of all such solemnities as are prescribed: Reitenbaugh v. Railroad Company, 21 Pa. 100. He does not state anywhere in this record that he did not have such notice.

The court finds as a fact that the agent specially named by the landowner to receive notice for him did receive the required notice, and that McAlister was frequently in the neighborhood after the statutory invasion of his property by the railroad company. The changed conditions necessarily resulting from placing rails and ties on embankments and fills, by which fields and fences would be altered, gave ocular information of a fact of which he must take notice. He cannot be permitted, after so many years of passive acquiescence to the use of his property by the railroad, to interfere with the rights which became vested in others through his implied consent. The petitioner does not even allege that he has suffered any damage, and when inquiry becomes a duty, anything sufficient to put a party on inquiry is notice of whatever such inquiry would reveal.

The assignment of error is overruled and the judgment is affirmed.