## Arnold, Appellant, *v.* Buffalo, Rochester & Pittsburg Railway Company.

*Railroads—Eminent domain.—Settlement with landowner—Dower—Deed.*

The inchoate dower of a wife is defeated by the survey, location, and adoption of the right of way of a railroad over the land of her husband, an agreement by the owner, her husband, and the railroad company upon the amount of damages to be paid for the taking of the right of way, the payment of such damages by the company to the owner, a grant by the owner of the right to construct and operate the road upon the location adopted and a release of damages therefor, and the construction and operation of a public railroad upon the location agreed upon.

Dower inchoate is not an estate in the land, but a mere contingent claim, and is defeated by proceedings to appropriate the land to public use during the life of the husband.

Argued Oct. 22, 1906. Appeal, No. 203, Oct. T., 1905, by plaintiff, from judgment of C. P. Clearfield Co., Sept. T., 1902, No. 343, on verdict for defendant in case of Mary A. Arnold *v.* Buffalo, Rochester & Pittsburg Railway Company. Before RICE, P. J., PORTER, HENDERSON, MORRISON, ORLADY and HEAD, JJ. Affirmed.

Writ of dower unde nihil habet. Before WILSON, J., specially presiding.

The opinion of the Superior Court states the case.

Verdict and judgment for defendant. Plaintiff appealed.

*Error assigned* was in giving instructions for defendant.

*Roland D. Swoope,* for appellant.—While the right of dower is inchoate during the life of the husband, yet such a right is subject to judicial protection: Buzick v. Buzick, 44 Iowa, 259; McClurg v. Schwartz, 87 Pa. 521; Thompson v. Morrow, 5 S. & R. 288; Ayetsky v. Goery, 2 Brewster, 302; Benner v. Evans, 3 P. & W. 454.

Where corporations with power to take lands under the right of eminent domain, do not proceed under the statute to con-

demn them, but purchase from the owner, the right acquired is but that of a purchaser and not the same as that by proceedings under the statute : Lord v. Meadville Water Co., 135 Pa. 122; Penna. Co. v. Railroad Co., 204 Pa. 356; P. & R. Railroad Co. v. Pottsville Water Co., 182 Pa. 418; Mount Pleasant Coal Company v. Railroad Co., 200 Pa. 434.

The purchase by a railroad company from the husband does not divest dower : Nye v. Taunton Branch R. R. Co., 113 Mass. 277; Washburn on Real Property, p. 221, sec. 37; Scribner on Dower, 2d ed., p. 581.

It is only where a railroad company acquires the property by condemnation proceedings that they obtain merely an easement upon the land : West Penna. Railroad Co. v. Johnston, 59 Pa. 290; Page v. Heineberg, 40 Vt. 81.

*Frank Fielding*, with him *C. H. M'Cauley*, for appellee.— An inchoate right of dower is destroyed by a voluntary conveyance executed by the husband alone without payment of any consideration, of a right of way to a railroad company to be used only for railroad purposes, as this constitutes a dedication of the land to a public use : Venable v. Wabash Western R. R. Co., 18 L. R. A. 68; Flynn v. Flynn, 42 L. R. A. 98.

We are unable to find any decided case where a feme covert has been held to be such an owner as would compel the company to agree with her upon the amount of such damages.

It is well settled that damages belong to the owner at the time of the taking and do not pass to the purchaser of the land under a deed made subsequent to the taking, unless expressly conveyed by such deed : Zimmerman v. Union Canal Co., 1 Watts & Serg. 346; M'Fadden v. Johnson, 72 Pa. 335; Blackiston's Appeal, 81* Pa. 339; Fries v. Southern Penna. R. R. & Mining Co., 85 Pa. 73; Hoffman's Appeal, 118 Pa. 512.

The defendant company has used these lands for railroad purposes, and Mrs. Arnold can make no claim unless the company should use them for some other purpose : Flynn v. Flynn, 42 L. R. A. 98; Bean v. Kulp, 7 Phila. 650; Brown v. Corey, 43 Pa. 495.

OPINION BY PORTER, J., February 25, 1907 :

The Clearfield and Mahoning Railway Company was duly

incorporated by letters patent dated May 28, 1892, for the purpose of constructing a line of railroad from a point on the Buffalo, Rochester & Pittsburg Railway, at or near Jefferson line, in Clearfield county, Pennsylvania, to a connection with the Beech Creek Railroad at or near Clearfield, Clearfield county, Pennsylvania. The company was duly organized, and having caused experimental lines to be surveyed and marked upon the ground, the president and board of directors of said company did, on May 31, 1892, select, fix and adopt one of the lines so marked, as and for the location of the proposed road. The location thus adopted, and upon which the railroad was subsequently constructed and was and is now operated, passed through two tracts of land owned by Samuel Arnold. Samuel Arnold, on July 12, 1892, executed an agreement under seal, " in consideration of the advantages to be derived from the location and construction of · the railroad hereafter mentioned, and of the sum of one dollar, to me in hand paid by the said Clearfield & Mahoning Railroad Company, at and before execution hereof, the receipt whereof is hereby acknowledged; and of the further consideration hereinafter named to be done by said company upon the execution and delivery of the deed of conveyance hereinafter mentioned, do hereby for myself, my heirs, executors, administrators and assigns, grant to the said company, their' successors and assigns, the right and privilege, irrevocable, of surveying, locating, constructing and using, by themselves, their engineers, contractors, agents and employees, a railroad upon said line or route and with as many tracks as they may deem proper, through, over, and upon a certain tracts or parcels of land belonging to me and situate in Bloom and Pike Townships, Clearfield county and state of Pennsylvania." Then follows a brief description of the land to be used for right of way, which description is dependent upon and refers to the line of the road as already located and marked through the tracts of land; the same being referred to and designated " as now located and extending from station 493 plus 50 to station 581, a distance of 8750 feet and from station 719 plus 08 to 845 plus 41, a distance of 12633 feet." This agreement also contained the covenant on the part of Arnold to execute a deed in fee simple for the strip of ground " whenever requested." And, further, to release the company,

their successors and assigns from all claims and demands for
damages, by reason of the taking and using of said land for
said railroad, or by reason of the construction, maintenance and
operation of said railroad on and over said tract or parcel of
land. This agreement also provided that the railroad com-
pany should construct and maintain a siding, sufficient to con-
tain six cars. The railroad was constructed through the tracts
of land upon the said location, and was subsequently completed
between its authorized termini and has been operated for many
years. On November 15, 1892, Arnold and the railroad com-
pany entered into a written agreement as to the manner in
which the siding, referred to in Arnold's release of damages,
should be constructed. And that the railroad constructed and
maintained the siding in accordance with that agreement is an
undisputed fact. Arnold on the same day, November 15, 1892,
executed two deeds, in which his wife, the appellant, did not
join, to the railroad company conveying the land covered by the
right of way of the railroad, but as the appellant has not printed
those deeds, it is impossible for us to say what title they
vested in the corporation. The Buffalo, Rochester & Pitts-
burg Railway Company, the appellee, subsequently leased the
Clearfield & Mahoning Railway, and is now lawfully operating
same. The plaintiff was, at the time the railroad located its
line over the land, the lawful wife of Samuel Arnold, and so
continued until the death of the latter on May 31, 1899. The
appellant seeks in this proceeding to have dower assigned to
her, out of the land covered by the right of way of the railroad
company. The assignments of error present but one question.
Is the inchoate dower of a wife defeated by the survey, loca-
tion and adoption of the right of way of a railroad over the
land of her husband, an agreement by the owner, the husband,
and the railroad company upon the amount of damages to be
paid for the taking of the right of way, the payment of said
damages by the company to the owner, a grant by the owner
of the right to construct and operate the road upon the loca-
tion adopted and a release of damages therefor, and the con-
struction and operation of a public railroad upon the location
agreed upon ?

The railroad company derived its right to appropriate private
lands over which it located its line, upon paying or securing

compensation to the owner, from the acts of February 19, 1849, P. L. 79 and April 4, 1868, P. L. 62. The 10th section of the act of 1849 empowers the president and directors of the company, " to survey, ascertain, locate, fix, mark, and determine such route for a railroad as they may deem expedient," between the termini authorized by the charter. This is the grant of the power to take private property for a purpose which the legislature in its discretion has declared to be a public use. The 11th section of the act provides the manner in which the right of the private owner to the compensation or security guaranteed by the constitution shall be rendered secure. An entry on lands of a private owner to build a railroad, is an entry under the state, exercising the right of eminent domain, and in pursuance of public law ; and all private contracts are subordinate thereto. It is the resumption by the sovereign of a clear right of sovereignty, and in subordination to which the covenants of all deeds are made. Samuel Arnold held the land in question, as every man holds his property, subject to the call of the government. The statutes which invested this railroad company with this attribute of the sovereign, authorized it to locate its line over private property, but required it to apply to the owner and endeavor to agree with him as to the compensation, unless the owner was absent or legally incapacitated, and it is only in case of a failure to agree that it is necessary to invoke the action of the courts. When there is a failure to agree, either the owner or the corporation may petition the court for the appointment of viewers to ascertain the damages. When there is an agreement as to the amount of damages, they must be paid before the company has a right to take possession of the land, and when there is a failure to agree they must furnish security for such damages before they acquire dominion over the property. Whether the company agrees with the owner and pays him the amount agreed upon, or furnishes the required security, takes possession of the land and leaves the amount of the damages to be determined in the manner provided by law, the result is the same in either case, the whole proceeding is an appropriation of private property to a public use, in the manner provided by law. " The survey on the ground, followed by selection and proper adoption of a line for the proposed road, makes what was before experimental and

open, a fixed and definite location. It fastens a servitude upon the property affected thereby, and so takes from the owner and appropriates to the use of the corporation. It gives to the latter a standing to settle with and make compensation to the owner for the property thus taken and appropriated to its own use, and, in case they cannot agree, it gives adequate security for the payment of damages when legally ascertained. Until such compensation is made, or in lieu thereof, approved security is given, the title of the owner is not divested. As against him, the corporation, by its act of location, can acquire only a conditional title which ripens into an absolute one upon making compensation:" Johnston v. Callery, 173 Pa. 129. "The act of location is at the same time the act of appropriation. The space covered by the line as located is thereby seized and appropriated to the purposes of the construction and operation of the railroad by virtue of the power of eminent domain, and nothing remains to be done except to compensate the owner. After the act of location by the company, the owner or the company may proceed at once to secure an ascertainment of damages:" Williamsport, etc., R. R. Co. v. Railroad Co., 141 Pa. 407; Wadhams v. Lackawanna & Bloomsburg Railroad Company, 42 Pa. 303. The filing and approval of the bond vests the title to the right of way in the railroad company, and the owner must look to his bond for his damages: Fries v. Southern Pennsylvania Railroad & Mining Company, 85 Pa. 73; Philadelphia & Reading Railroad Company v. Lawrence, 10 Philadelphia, 604; Reitenbaugh v. Railroad Company, 21 Pa. 100. There can be no question that under the undisputed facts in this case the railroad company in taking the property was exercising the right of eminent domain which had been delegated to it by the commonwealth: Brown v. Corey and Peterson, 43 Pa. 495; Hays v. Risher, 32 Pa. 169.

The constitution requires that compensation be made to the owner of property taken or injured, and the statute requires that the agreement as to the amount of the compensation shall be made with the owner, and in the event of a failure to agree that proceedings to determine the amount of the damages shall be in the name of the owner. It is only the owner who is entitled to compensation. "It is true that it has been held, that one who holds less than a fee simple in the land is an owner

within the meaning of the statute, but his estate must be a part of the fee, one of the fractions of the unit, necessary with other interests to constitute the entire whole : " Workman v. Mifflin, 30 Pa. 362. The appropriation being intended for public use, policy requires that the liens shall be divested, but at the same time not at the expense of any persons interested, who have the same lien on the money that they had on the land itself. " The owner of the land, who was insolvent, had the legal right to receive the money from the company, and payment to him would have been a good payment without notice of the equitable interest. But although he was the owner of the land yet in respect to the legacies charged on the land, he was a trustee for others who had an equitable lien on the money : " Deckert's Appeal, 5 W. & S. 342; Reese v. Addams, 16 S. & R. 40 ; Philadelphia & Reading Railroad Co. v. Pennsylvania Schuylkill Valley Railroad Co., 151 Pa. 569 ; Bean v. Kulp, 7 Philadelphia, 650.

The inchoate dower of a wife may be defeated by the exercise of eminent domain during the life of the husband : Washburn on Real Property, book 1, page 220, section 37. The estate of the widow after assignment of dower is a continuation of the estate of her deceased husband. It follows that, while living, he as owner, is entitled to and represents the absolute fee. Dower inchoate is not an estate in the land but a mere contingent claim, and is defeated by proceedings to appropriate the land to public use during the life of the husband : Moore v. City of New York, 8 N. Y. 110; Duncan v. City of Terre Haute, 85 Indiana, 104; Venable v. Wabash Western Ry. Co., 112 Missouri, 103 (20 S. W. Repr. 493) ; Gwynne v. Cincinnati, 3 Ohio, 24; Thurber v. Townsend, 22 N. Y. 517. When lands are dedicated to public use by the husband, or by a legal proceeding to which he is a party, the same result follows. " Here, in this commonwealth, laws have been passed from time to time, altering our statute of distributions, and altering the manner of making wills. Those laws have been considered sound and good, if in operation at the time of the decedent's death, no matter whose inchoate interests are affected. The legislature might at their discretion annul the common-law right of dower, and repeal the statute of wills. There is no constitutional provision guarding the common-law right of dower; it is not part

of the marriage contract.  It results from wedlock by the operation of the existing laws at the time of the husband's death:" Melizet's Appeal, 17 Pa. 449.  The statutes which invested the railroad company with the power to appropriate land for a right of way clearly indicate the legislative intention that such taking should vest in the company the right to so occupy the land perpetually and exclusively.  The constitution of the commonwealth and the legislation thereunder, require only that settlement be made with the owner.  Samuel Arnold owned the land at the time of its appropriation by the railroad company by a title in fee simple, he was the only person who had any estate in the land and there were no creditors holding liens. He was, therefore, the only party who was entitled to be heard upon the question of his damages, and by the settlement with him the railroad company acquired a perpetual right of way. The railroad company was authorized to appropriate this land, and the legislation which conferred that authority gave no right to compensation, to the wife of the owner, for an inchoate right of dower, nor is such right guaranteed to her by the constitutional provision.  She had no estate in the land, nor had she any lien thereon.  The assertion of any right to have dower assigned to her out of the right of way acquired by the railroad company, is inconsistent with the provisions of the legislation under which the railroad acquired title.

The judgment is affirmed.