## Stiteler v. Younkin et ux.

*Archibald M. Matthews*, for plaintiff.

*Coffroth & Boose*, for defendants.

LANSBERRY, P. J., August 9, 1950.—W. J. Stiteler, Jr., plaintiff, filed this bill in equity against M. M. Younkin, defendant, seeking a decree of specific performance of an agreement for the sale of certain real estate; defendant's wife, Ruth Younkin, was by amendment subsequently added as a defendant. The proceed-

ing is now before the court on defendant's preliminary objections and those facts which are well pleaded by plaintiff must be considered as admitted in the disposition of the preliminary objections, as they are construed as similar objections entered to a complaint at law: 8 Standard Pa. Practice 190.

From plaintiff's statement, as amended, we deem the following averred facts as the ones essential to a present disposition of the matter. On August 20, 1949, the Lewis M. King farm was offered for sale in the administration of the King estate, and plaintiff desired to purchase at least a portion thereof adjoining his farm, and original defendant desired to purchase the whole farm; these parties discussed their mutual desires as to the King farm, and they then verbally agreed that plaintiff would pay $2,500 to defendant for that portion of the farm plaintiff desired and would pay that sum upon confirmation of the sale by the Orphans' Court of Somerset County; M. M. Younkin being the highest bidder at the sale, the farm was knocked down to him; two days later the parties reduced their verbal agreement to writing providing, inter alia, "whereas defendant was purchaser of the King farm at Orphans' Court sale and plaintiff was desirous of purchasing a portion thereof, that in consideration of $2500.00, of which $250.00 was paid down, balance upon confirmation of the sale, defendant would convey to plaintiff said portion he desired by a 'good and valid general warranty deed' as soon as the portion was surveyed immediately following the confirmation of the sale;" the orphans' court sale was confirmed September 19th, at which time plaintiff paid over the balance of the purchase price, and thereafter plaintiff caused the necessary survey to be made, and furnished the draft thereof to defendant for preparation of the deed; the portion agreed upon contains 47.6 acres immediately

adjoining plaintiff's farm; defendant, M. M. Younkin, tendered a deed without the joinder of his wife, Ruth Younkin, averring that she refused to join in executing the deed unless she be paid an additional $1,250; plaintiff further averred that the deed tendered was not a "good and valid deed of general warranty" in accordance with the executed agreement, and therefore, refused to accept the deed proffered. On September 28, 1949, the deed from the King estate for the whole farm to M. M. Younkin was executed and on October 20, 1949, the deed was recorded; on October 21st the Union National Bank of Rockwood, Pa., entered its lien against M. M. Younkin on a judgment note executed October 20, 1949.

To the original bill in equity defendant filed a responsive answer, in which the above-recited allegations are for present purposes substantially admitted, but in the twelfth paragraph set forth in part:

". . . Defendant avers that he advised plaintiff that he would deliver a good and valid general warranty deed except as to the inchoate interest of defendant's wife in said premises. . . ."

Then followed the amended bill naming Ruth Younkin as a defendant and to this amended bill defendants have filed their preliminary objections, which are in essence as follows: (1) Plaintiff has an adequate remedy at law; (2) plaintiff is asking specific performance of a written contract against one who was not a party thereto; (3) the bill does not aver that Ruth Younkin did not have an "inchoate dower interest" in the property which was released; (4) plaintiff is not entitled to a general warranty deed but only the deed of M. M. Younkin "subject to the dower interest of defendant, Ruth Younkin" which defendant again tendered; (5) plaintiff not having averred fraud, accident or mistake, is bound by the agreement as written and executed and

that as the agreement is with defendant, M. M. Younkin, individually, and not as a trustee, to allow parol evidence would destroy or change the agreement and thereby permit the proof of a declaration of trust defeating the existence of the "inchoate dower interest", and (6) that plaintiff is not entitled to the relief sought.

Defendants' position was ably argued at the argument court and in the brief of their counsel, and we may introduce their contention by adopting their own language:

"The argument of defendants and the substance of their preliminary objections, logically fall into two parts as follows:

"1. Defendant, Ruth Younkin, as the wife of defendant, M. M. Younkin, has an inchoate dower interest in the premises and cannot be barred from successfully asserting her interest, and

"2. Plaintiff is not entitled to receive from defendant, M. M. Younkin, a general warranty deed so long as the wife of defendant refuses to release, surrender or convey her inchoate dower right in the premises."

While not expressly abandoning their other objections to the bill, defendants have clearly indicated their preliminary objections, if valid, must be determined upon their major premise, which is that Ruth Younkin "has an inchoate dower interest in the premises." Assuming that the present statutory interest of a widow awarded by our present laws is "an inchoate dower interest," the question here is, does Ruth Younkin have such an inchoate interest in the premises under these particular facts? We have neither been informed of nor found any Pennsylvania precedent precisely in point, and therefore, deem it necessary to briefly review the legal principles applicable.

It is frequently asserted that dower has been abolished and strictly speaking the assertion may be accu-

rate. However, in principle, rather than form, we still have it. Mr. Justice Linn, in Kirk v. Kirk, 340 Pa. 203, 207, said:

"Under modern statutes, a wife still has a contingent interest in her husband's real estate similar to inchoate dower at common law."

Dower inchoate is not an estate in land but a mere contingent claim: Arnold v. Buffalo, Rochester & Pittsburg Railway Company, 32 Pa. Superior Ct. 452.

We must now inquire, when does this contingent interest or inchoate right of dower arise?

"The inchoate right of dower arises not out of contract, but as an institution of the law; it is not derived from the husband. Since marriage and seizin are essential to the existence of this right, the right attaches to the land as soon as there is a concurrence of marriage and seizin, that is, at the time of marriage, as to lands of which the husband is then seized, or at the time of acquisition, as to land subsequently acquired during coverture:" 28 C. J. S. Dower, §44.

"The right of inchoate dower comes into being after marriage of the parties upon the concurrence therewith of seisin in the husband of property and an estate subject to dower:" 17 Am. Jur. Dower, §47.

"A wife's inchoate right of dower attaches to an incident of her husband's seisin." Thompson on Real Property, vol. 2, page 595.

This is the law of Pennsylvania, as well as practically every jurisdiction.

"The rule of the common law is distinct, that a wife is not entitled to dower in land of which her husband was not seized in possession during coverture": Cotes Appeal, 79 Pa. 235; Kennedy v. Nedrow, 1 Dallas 415; Bregy Pa. Intestate, Wills and Estate Acts of 1947, p. 611.

What then is seizin in its legal sense and as applicable to the case at bar?

"The term 'seisin' has a technical meaning when used in connection with the existence of a common law dower right or its statutory equivalent. At common law, generally in relation to transfers and holding of real property, it imported a feudal investiture of title by actual possession. In relation to dower, however, it means the force of possession under some title or the right to hold the title. It is either a seizin in deed or a seisin in law. Hence, in order to constitute seisin sufficient to support a claim for dower at common law, it is necessary that there be either an actual corporeal seisin or the right to make such immediate seisin in the husband during coverture, or, as it is put in the cases, a seisin in law with a present right to actual seisin is sufficient. The bare possession of land, however, is not seisin. Furthermore, for want of seisin dower or a similar inchoate interest cannot be asserted against land which the husband sold before buying it." 17 Am. Jur., Dower, §19.

And to the same effect is Thompson on Real Property, vol. 2, §876, at page 594:

"Seisin of the husband of an estate of inheritance is essential to the wife's right to dower, and this seisin must be one beneficial to the husband himself and not a mere naked seisin for the benefit of another. The word 'seisin' as here used means a seisin accompanied by a beneficial interest; and so, where the husband's holding was merely that of a trustee, he had no such interest as would entitle the wife to dower. . . . Mere naked possession by the husband is not seisin in the sense that the wife can claim dower on account of it, but if the husband has seisin in law, that is, a right to the immediate possession of a freehold, the wife may claim dower, though he never was actually in possession of the land."

In the case of Pritts v. Ritchey, 29 Pa. 71, Mr. Justice Lowrie said as to seisin: "It is the completion of

investiture by which the tenant of the freehold is admitted into the tenure." See also Junk v. Canon, 34 Pa. 286, and Deshong v. Deshong et al., 186 Pa. 227.

Upon application of these principles to the facts in this case, the conclusion appears to us to be inescapable that on August 20th when the meeting of the minds occurred and their verbal agreement was concluded, and as well two days later when it was reduced to writing, that M. M. Younkin was not seized of the premises and it follows that the contingent interest or inchoate right of dower had not arisen as to those premises. It must be remembered that the King farm sale had not been confirmed by the orphans' court and at the time M. M. Younkin had no right of possession. When this agreement was executed more remained to pass the title than mere passing of title papers. When M. M. Younkin bid at the orphans' court sale he knew that W. J. Stiteler, Jr., wanted a portion of that real estate, the portion adjoining his own farm. It is significant that W. J. Stiteler, Jr., did not bid at that sale, and it can only be concluded that he was relying on the understanding had with defendant, M. M. Younkin. Both the verbal agreement and the written agreement were wholly contingent upon the confirmation of that sale by the orphans' court, and not an idle formality, and that contingency must be read into that agreement.

Until final confirmation, M. M. Younkin was as to the King farm only the highest bidder at the sale with the down money deposited and such legal rights as thereto pertained, of which inchoate dower was not one.

Suppose that M. M. Younkin had defaulted as to his offer made at the King sale before confirmation by the orphans' court, who would say that Ruth Younkin had an inchoate dower interest in the premises? And the reason assigned would be that M. M. Younkin was not seized thereof. Neither seisin in deed, passing of title,

nor seisin in law, right to possession, had occurred as to M. M. Younkin at the time of either agreement, and it follows that the inchoate right of dower, the necessary contingent interest, had not occurred as to his wife, Ruth Younkin. There was nothing then for her to release or convey.

While we know of no Pennsylvania case precisely in point under the facts averred here, there are authorities referring to "instantaneous seisin" where the same act gives the husband an estate and therewith conveys it out of him and also cases where the husband sells land before buying it, in most of which cases it is said the inchoate right of dower does not attach, obviously for the protection of the vendee. In those cases the husband is merely a conduit for passing title.

In Mishawaka St. Joseph Loan & Tr. Co. v. Neu, 209 Ind. 433, 196 N. E. 85, the Supreme Court of Indiana said:

"Equity looks to the substance and not the form. The facts disclose that Herbert R. Huffman sold the property before he bought it, and accepted part of the consideration from the appellees before he paid any consideration to the Strykers" (his vendors) and held "Flora C. Huffman may not assert an inchoate interest in the property" relying on Sharts v. Holloway, 150 Ind. 403, 50 N. E. 386 which held ". . . if a husband receives a conveyance of land on which there is an outstanding lien, or an equity that is binding on him, the wife has no inchoate interest in such land as against such outstanding equity or lien . . . And, as his wife acquired her interest through the husband, it is subject to all the liabilities the husband's title is subject to when it comes into existence."

Detwiler et al. v. Capone et ux., 357 Pa. 495, is urged upon us as compelling the conclusion that Ruth Younkin had an inchoate interest in these premises. The facts clearly show the case not in point. In Det-

wiler et al. v. Capone et ux., the husband acquired title—he was seized—before his marriage and before marriage also agreed to sell it, whereas here the husband agreed to sell the property before he acquired or was seized of it.

While not necessary for the disposition of the question presented, and while the language of the written agreement is not the language usually employed in an agency, the agreement may be fairly and logically construed to constitute defendant Younkin the agent of plaintiff, Stiteler. Both parties, being neighbors and knowing the farm very well, knew the desires of each other thereto; and they both knew the farm was being advertised for sale as a unit. Is it unreasonable or illogical to assume that Stiteler said to Younkin in effect, you buy the whole farm, 46 acres thereof for me and the remainder for yourself, the cost of my part will be $2,500 and you pay for the remainder what you care to? And if that be the situation, although not stated in the most appropriate language, it would clearly amount to an agency and under that circumstance there could be no statutory or inchoate dower interest in defendant, Ruth Younkin. It would be nothing more than the situation of an agent buying for an undisclosed principal and taking the title in his own name in which clearly there would be neither statutory interest nor common-law inchoate right of dower in the agent's wife.

Having concluded that the major premise advanced by defendants' counsel is untenable, we shall overrule the preliminary objections and enter the following

*Order*

Now, August 9, 1950, the within matter having come on for hearing on defendants' preliminary objections and the same having been considered at length, the same are now overruled, defendants are allowed 20 days to file such additional answer to the amended bill

as they deem necessary and the bill and answer are directed to be placed on the calendar for hearing, the costs to abide the final result.