## Pittsburgh Cut Wire Company, Appellant, *v.* Sufrin et al.

Argued March 24, 1944. Before MAXEY, C. J., DREW, LINN, STERN, PATTERSON, STEARNE and HUGHES, JJ.

*Charles C. Arensberg,* of *Patterson, Crawford, Arensberg & Dunn,* for appellant.

*Carl E. Glock,* with him *Reed, Smith, Shaw & McClay,* for appellees.

OPINION BY MR. JUSTICE HUGHES, June 30, 1944:

The plaintiff brought a bill in equity for an injunction. The bill of complaint averred that the plaintiff had developed a machine of novel design for manufacturing paper clips; that one Bradley was employed by the plaintiff as draftsman to make drawings of the machine so that it could be duplicated; that Bradley was induced to leave the employ of the plaintiff by Martin Sufrin, one of the defendants; that Bradley took with him the drawings and blueprints and entered the employ of Sufrin's Inc., and built identical machines to those of the plaintiff; that defendants used those machines for the manufacture of paper clips and sold them in competition with the plaintiff. The plaintiff asked that the defendants be enjoined from using such machines for the manufacture of paper clips and from selling paper clips made on those machines; also that the defendants be required to deliver up any blueprints made from drawings of the defendant Bradley, or sketches or drawings similar thereto, as well as machines and paper clips already made. The bill of complaint was dismissed and the plaintiff takes this appeal.

The assignments of error question the findings of fact of the Chancellor. The findings of fact by a chancellor have the force and effect of a verdict of a jury and will not be disturbed if there is evidence to support them: *Himrod v. McFayden,* 283 Pa. 103, 105, 128 A. 733; *Humphrys v. Republican Central Campaign Committee et al.,* 320 Pa. 353, 357, 182 A. 366. There was ample evidence

to support the following findings of fact: The Pittsburgh Cut Wire Company was engaged in the manufacture of various wire products, including Gem Paper Clips. Sufrin's Inc., was a jobber of stationery, stationery supplies and other products, including Gem Paper Clips. I. & M. Sufrin, a partnership composed of Martin Sufrin and Isadore Sufrin, also manufactured Gem Paper Clips, which were sold through Sufrin's Inc. George Bradley was employed by the Pittsburgh Cut Wire Company as a draftsman and designer and while so employed made tracings and drawings to be used for building and assembling a Gem Paper Clip machine. Frank Magidson, President of the Pittsburgh Cut Wire Company, was the main designer of this machine and, in connection with the work, partly tore down and used an old machine for making Gem Paper Clips. Several other persons did some work on this machine, but the plaintiff company did not enjoin secrecy upon any one. For more than fifty years Gem Paper Clip machines have been in use and there is nothing unusual or out of the ordinary about the various mechanical parts of the plaintiff's machine, nor had the plaintiff patented any parts thereof as new or novel prior to the inception of this action. In March, 1941, the plaintiff discharged Bradley and the Sufrins subsequently employed him to build for them a machine for the production of Gem Paper Clips. When he left the employ of the Pittsburgh Cut Wire Company he did not take any blueprints of their machine. He did take his sketches of parts, which he considered his property, he not having been pledged to any secrecy in connection with his work as a mechanical draftsman and under such circumstances it being the customary practice of draftsmen and designers to so retain them. However, these sketches alone were insufficient for either him or any other mechanical draftsman to design and complete Gem Paper Clip machines.

While in Sufrins' employ he produced a complete set of tracings from which blueprints were made, completed

some Gem Paper Clip machines, and they were placed in operation by the defendants. The machines of the plaintiff and the defendants had a general similarity of design, but there are a number of variations, including the cutter device, the twister gear, the straightener for taking the set out of wire, and the feeder of wire into the machine. The evidence does not show that the whole of the machine or any of its salient working apparatus were new or novel in the art of wire twisting or allied machinery, but they had been openly used in the mechanical world for many years.

The burden was on the plaintiff to show it held a trade secret and the defendants had misappropriated it in violation of a confidential relationship. There being no evidence of a trade secret in the construction or operation of this machine, and Bradley not being enjoined or having agreed not to reveal any alleged trade secret of the plaintiff in connection therewith when he quit the service of the plaintiff, the experience, knowledge, memory, and skill, which he gained while there employed, he had a right to use to his own advantage: *Wireless Specialty Apparatus Co. v. Mica Condenser Co., Ltd., et al.,* 131 N. E. 307. To entitle the plaintiff to equitable relief, the burden was upon it to show that there was a trade secret or a secret process of manufacture: *Macbeth-Evans Glass Company v. Schnelbach et al.,* 239 Pa. 76, 86 A. 688; and in the third conclusion of law the court finds: "The Gem Paper Clip machine of the plaintiff was neither a new and novel design in the art, either basically or in its process of functioning, nor was it kept a trade secret." In view of this finding, fully sustained by the evidence, the plaintiff failed in the first step of the necessary proof required of it for a judgment in its favor. The record further discloses that no secrecy was enjoined, either by contract or warning, on the employees of the plaintiff, either in the production or subsequent use of the Gem Paper Clip machine, nor were there any circumstances that would indicate to an

employee such a confidential relationship existing under his contract of employment as would cause the employee to be charged with the fact that the Gem Paper Clip machine or any of its parts were trade secrets of the plaintiff. A man's aptitude, his skill, his dexterity, his manual and mental ability, and such other subjective knowledge as he obtains while in the course of his employment, are not the property of his employer and the right to use and expand these powers remains his property unless curtailed through some restrictive covenant entered into with the employer: Williston on Contracts, §1646, p. 4627. The plaintiff claims no such agreement with Bradley, so when he entered the employ of Sufrins he was privileged to exercise his knowledge for his own advantage. In view of the Chancellor's findings of fact, Bradley went to Sufrins vested with no trade secret, nor in any manner enjoined to secrecy, and without any blueprints, drawings, or other property of the plaintiff. Sufrin could employ Bradley to construct paper clip machines under these circumstances, and the court below correctly held that the defendants could not be enjoined from using these machines and selling paper clips made on them.

Judgment affirmed.