Patton, Appellant, *v.* Patton.

Argued September 26, 1944. Before MAXEY, C. J., DREW, LINN, STERN, PATTERSON, STEARNE and HUGHES, JJ.

*James L. Hogan,* with him *Harry C. Golden* and *Clyde Holt,* for appellant.

*Harry A. Heilman,* with him *Charles E. Harrington,* for appellee.

OPINION BY MR. JUSTICE HUGHES, November 27, 1944:

The plaintiff filed this bill in equity to have the defendant declared a trustee *ex maleficio,* claiming her deceased husband had fraudulently transferred to the defendant certain personal property, in violation of her rights, under a treaty of marriage existing at the time of said transfer.

The chancellor found the facts to be that Estella Patton and Thomas Patton were married November 1, 1929, and resided together until August 6, 1931, when Thomas Patton left his home in Armstrong County and went to Nebraska, and from there to California, where he died November 15, 1933. From the late fall of 1928 until the first day of April, 1929, Thomas Patton was a sick man and daily anticipated his death, even making preparations for his funeral and burial. During the period prior to January 10, 1929, he expressed many times his fear of death and stated he was going to fix everything up, meaning his property, and give it to the ones he wanted to have it. On that date he returned from Kittanning and stated he had fixed everything up the way he wanted it. At that time he made a gift of $10,-000.00 in municipal bonds to William Lowry, with the provision that Lowry pay him interest on the bonds during the donor's lifetime; he transferred from his savings account $1,000.00 to the account of Lee and Ollie Skinner and delivered the bank book to them; he delivered to William Lowry a package containing $8,000.00 in bonds payable to bearer and a bank book showing a savings deposit of $2,000.00 to the credit of Walter Patton and Ford Patton, with instructions to give the bonds to William M. Patton "and tell him I am giving him Seven Thousand ($7,000.00) Dollars of these bonds for his own, and all that he need do is to pay me the interest from the bonds during my lifetime. Also to tell him I want him to give a Thousand Dollar bond to Merle

Patton, and the bank book to Walter Patton and Ford Patton." William Lowry carried out these instructions, as did also William Patton. Since January 10, 1929, William M. Patton has retained $7,000.00 of the bonds and paid Thomas Patton interest from the date of their delivery until Thomas Patton's death.

The chancellor further found that at no time during this period was Thomas Patton keeping company with Estella Patton, nor at any time during his marriage to her did he tell her of the property he owned, nor was any such statement either made to or relied upon by her as a consideration of her marriage with Thomas Patton. She disclosed no treaty of marriage with Thomas Patton prior to or on the 10th day of January, 1929. Having found that Thomas Patton made a valid gift to William M. Patton, and that there was no intent to defraud the plaintiff, the bill was dismissed.

The findings of fact by a chancellor, when affirmed in banc, have the force and effect of a verdict of a jury and will not be disturbed if there is evidence to support them: *Pittsburgh Cut Wire Company v. Sufrin et al.,* 350 Pa. 31, 32, 38 A. 2d 33.

The appellant contends there was sufficient evidence to sustain actual fraud against the wife in the transfer by decedent of his personal property to third parties with intent to defeat his wife's dower interest. This marriage occurred between a widower 79 years of age and a widow 47 years of age, almost ten months after the transfers in question. The chancellor has found no treaty of marriage existed at the time of the gift to the defendant. To sustain her position, the plaintiff must show not only the existence of such an arrangement, but also that there was some actual fraud upon the part of Thomas Patton at the time the gift was made. In *Hummel's Estate,* 161 Pa. 215, 217, 28 A. 1113, we stated: "[The husband] may give away or squander his property and thus reduce himself and wife to poverty, according to the authorities; but

no case has gone so far as to sustain a voluntary obligation given and received with intent to defraud the wife's rights." But the fraudulent intent is the indispensable foundation for any such limit of his control: *Young's Estate*, 202 Pa. 431, 441, 51 A. 1036; *Windolph v. Girard Trust Company*, 245 Pa. 349, 363, 91 A. 634. In *Kirk v. Kirk et al.*, 340 Pa. 203, 207, 16 A. 2d 47, it was pointed out: "Either spouse may challenge, as fraudulent, a conveyance of real estate or a gift of personal property made during a treaty of marriage, but mere proof of the conveyance or gift, without the knowledge of the other party, does not constitute a prima facie case of fraudulent transfer. In addition, it is necessary for the party alleging it to prove the fraud, or 'actual fraud', to use an expression common in the decisions. Mere conjecture or suspicion does not take the place of evidence." The plaintiff has failed to meet this burden which was upon her.

The plaintiff claims she should have been permitted to testify to matters occurring in the lifetime of her deceased husband since this is a suit by the wife against a third party involving property transferred by the husband to the third party. She contends she is not claiming any property under the intestate laws and that the Act of 1887, P. L. 158, section 5 (e) which reads as follows, "Nor, where any party to a thing or contract in action is dead, . . . and his right thereto or therein has passed, either by his own act or by the act of the law, to a party on the record, who represents his interest in the subject in controversy, shall any surviving or remaining party to such thing or contract, or any other person whose interest shall be adverse to the said right of such deceased . . . party, be a competent witness to any matter occurring before the death of said party", does not apply to her. It is argued that she is not attacking the right of Thomas Patton or of his estate to have the transfer stand, but is claiming the individual right to set aside

the transfer because of actual fraud committed against her. If she were successful, she would be entitled to receive that part of the personal property transferred as would be hers under the intestate law. Her interest is adverse to the rights of the decedent. It was the decedent's right to transfer his property voluntarily to the defendant. "The interest of one who would take a share of the property should its transfer be set aside makes him incompetent to testify": *Gallagher, Adm., v. Rogan,* 330 Pa. 545, 199 A. 168; *King v. Lemmer,* 315 Pa. 254, 173 A. 176.

We have examined all of the assignments of error and are of the opinion that they are without merit and the judgment of the court below should be affirmed.

Judgment affirmed.