BROSKY, J.,
— Walter W. Arm-stead, doing business and trading as Consulting Service and Consulting Service Enterprises, Inc., a corporation, instituted an action against Fay Miller to restrain defendant for six months following a final court order, from directly or indirectly engaging in the employment agency business except on behalf of plaintiffs as provided in a written contract. Defendant contends she had no contract of employment with Consultant Service Enterprises, Inc.
The contract was made personally with Walter W. Armstead. Walter W. Armstead could not legally assign the contract to Consultant Service Enterprises, Inc., and individual plaintiff breached the contract by refusing to pay defendant according to the terms of the contract. Defendant admits she did terminate her employment with Consulting Service Enterprises, Inc. Defendant requests plaintiff, Walter W. Arm-stead, be ordered to account to her for commissions due her from May 6, 1968, to May 27, 1969, and to account to her for profits due her for the calendar *585 years 1968 and 1969; and to pay her the sum of $125, with interest.
The contract was entered into on May 6, 1968, between Walter Armstead trading and doing business as Consultant Service, an employment agency, parties of the first part, hereinafter sometime referred to as “Armstead,” and Fay Miller and Marilyn J. Francis, parties of the second part. No action was instituted against Marilyn J. Francis, no further mention will be made concerning her.
Armstead agreed to employ Fay Miller as manager —sales, commencing on May 6, 1968, and agreed to compensate defendant in accordance with the agreement. Since the evidence at trial was incomplete as to the lack of nonpayment, this court will limit its discussion to the restrictive covenants of the agreement. The pertinent parts of the agreement are as follows:
Paragraph 3:
“The parties of the second part promise that they will not individually or collectively enter, during the term of this agreement or for six months following the termination of this agreement, for any cause whatsoever, directly or indirectly, the employment agency business for either themselves or for any other person, persons or corporations within the geographical boundaries of Allegheny County, or for six months following the final order of court prohibiting such employment, whichever is later.”
Paragraph 4.:
“This agreement is terminable any time by either of the parties hereto.”
Paragraph 9.:
“The parties herein mutually covenant and agree to be legally bound by the terms of this agreement.”
“In witness whereof, the said parties have here *586 unto set their Hands and Seals this 6th day of May, 1968, A.D.”
Defendant terminated her employment with Consultant Service Enterprises, Inc., on or about October 6, 1969, and became employed by Anderson Agency. Defendant claims since the agreement of employment is with Walter W. Armstead d/b/a Consultant Service personally and the contract was not assignable, Consultant Service, Inc., therefore, has no legal rights under the contract. Since the individual plaintiff has assigned his employment business to the corporate plaintiff, this court is, therefore, not required to discuss the right of an injunction in favor of the individual plaintiff. Individual plaintiff’s position is that Armstead subscribed to 400 shares of stock of Consultant Service Enterprises, Inc., for $40,000 and has proposed to pay for same by conveying, transferring and assigning to the corporation, inter alia, “3. All tangible assets, including good will, choses in action, employment contracts,” and that plaintiff corporation, by resolution, accepted the said assets. Defendant’s position is that the assignment and acceptance was one of “future” and not one of “present” intention and the resolution of the corporate plaintiff’s acceptance supports her contention.
Could the individual plaintiff assign the employment contract to the corporate plaintiff ?
The employment contract in issue in this case is completely void of words indicating that either party thereto intended to be bound by an assignment of the contract. Nowhere in said contract does one find words such as “heirs and assigns” or “successor and assigns.”
The research of this court, and of counsel, has not disclosed any Pennsylvania appellate cases which touched directly on the issue whether the failure to *587 include in a contract such language that would allow the contract to be assigned to a successor or an assignee.
The case of Smith, Bell and Hauck, Inc. v. Cullins, 183 A. 2d 528, 123 Vt. 96 (1962), involved an attempt to enforce an employe’s covenant that he would not engage in the insurance business in a certain country for a three year period after termination of his employment. Quoting from Portuguese-American Bank of San Francisco v. Welles, 242 U. S. 7, 37 S. Ct. 3, the court noted that: “A covenantor is not to be held beyond his undertaking, and he may make that as narrow as he likes.” The court indicated that the controlling factor in the case was the intention of the parties to the original undertaking and went on to state:
“The absence of words of assignability, such as successors or assigns, is not of itself controlling, but it is sometime evidence that the intention of the parties was against assignment.”
The court concluded that the contract was personal in nature and not assignable.
In Perthou v. Stewart, 243 F. Supp. 655 (D.Or. 1965), a former employer sought damages for breach of noncompetition covenants by former employes. In holding that the contract was nonassignable, the court stated: “Sound authority supports the view that personal service contracts, such as those under examination, cannot be assigned. 3 Williston Contracts, §412 (3d ed., I960),” and noted the importance of the fact that the contracts in question did not include a covenant which might attempt to bind the successors and assigns of the parties. See also Sisco v. Empire Gas, Inc. of Belle Mina, 237 So. 2d 463, (1970), Schweiger v. Hoch, 223 So. 2d 557 (1969): There is no other evidence on the record that shows *588 factually what was done concerning the employment contract.
The Restatement of Contracts, sec. 150(1), provides as follows:
“An ‘effective assignment’ is one by which the assignor’s right to performance is extinguished and the assignee acquires a right to such performance.”
Section 157 of the Restatement of Contracts provides: “A right can be effectively assigned either orally or by a writing.”
Restatement of Contracts, sec. 166(1) provides as follows:
“A contract to assign a right in the future is not an assignment. But a contract to assign as security a right which is specified and capable of effective present assignment under §§151, 154, gives the promisee a right against the obligor inferior to that of an assignee only in that the right will be extinguished if, before satisfaction is obtained by the promisee, an assignment of the obligee’s right is made to a bona fide purchaser for value without notice of the prior contract.”
Comment a to section 166 states that the section relates to contracts to assign in the future. That comment goes on to state as follows:
“By definition an assignment contemplates no further action on the part of the assignor to complete the right of the assignee. ... A contract to assign involves a promise to do some further act in order to perfect the right of the promisee against the obligor. There is often a question of interpretation to be decided whether the language of the owner of a right indicates an intention to transfer the right immediately, or only an intention to bind himself to make such a transfer in the future. If there is merely a contract to assign in the future and the *589 promise has not been performed, any recognition of ownership of the promisee must be based on specific enforcement of the promise. The Section states the rights of the parties are to be adjusted as if the contract were specifically enforced, if the contract is made to secure some performance due from the promisor to the promisee, but not otherwise.”
The case law in Pennsylvania is in accord with the Restatement of Contracts. One of the basic principles embraced which the cases are clear about is that assignment is a transfer or setting over of property or some right or interest therein, from one person to another, wherein the transfer is of the entire interest in the estate, chattel or other thing: Purman Estate, 358 Pa. 187, 56 A. 2d 86 (1948), Melnick v. Pennsylvania Company for Banking and Trusts, 180 Pa. Superior Ct. 441, 119 A. 2d 825 (1956); Demmery v. Nashville Union Fire Insurance Company, 210 Pa. Superior Ct. 193, 232 A. 2d 21 (1967); and Wilcox v. Regester, 417 Pa. 475, 207 A. 2d 817 (1965). The Wilcox case specifically makes Restatement of Contracts Sec. 150(1) the law of Pennsylvania. The Demmery case compares assignment to subrogation and states that an assignment is a transfer of a whole claim. These cases are all cited initially for the principles of law which are contained therein. The Wilcox case, supra, is also important in the statement of the following principle:
“In an assignment, the nature of the particular assignment determines the identity of the real party. Ordinarily, an effective assignment is one by which the assignor’s right to performance by the obligor is extinguished and the assignee acquires a similar right to such performance. . . . Therefore, the assignee is usually the real party in interest and an action on the assignment must be prosecuted in his *590 name. . . . Importantly, however, an assignment of a right will not be effective if it purports to make a material change in the duties or responsibilities of the obligor, unless the obligor assents to such changes”: 207 A. 2d 820.
The Melnick case, supra, is interesting because of the nature of the writing involved therein. That writing which was claimed to be an assignment stated as follows:
“I . . . hereby authorize and empower you . . . to transfer and assign the title certificate to said truck to (plaintiff) . . . upon full and complete payment by me or by the said (plaintiff) to you as the entire amount of said encumbrance or the balance thereof due you.”
The Superior Court held that these words indicated no present intention to transfer but at most an authorization to do something in the future.
This brings us back to the proposition raised in Restatement of Contracts Sec. 166(1), in Comment a., which pointed out that a contract or agreement to assign in the future is not an assignment. In accord with this proposition is the old case of Benford v. Sanner, 40 Pa. 9 (1891) 3 P.L.E., Assignments Sec. 21. The language of the minutes which we quoted at the outset demonstrates that Walter W. Armstead subscribed for 400 shares of stock at a total price of $40,000 and proposed to the corporation that these were to be paid for by his conveying, transferring and assigning certain matters to the corporation. We hold that this act represented a promise to assign in the future if certain conditions were agreed to. Plaintiff corporation relies on the resolution of acceptance in its brief viz.:
“Resolved, that the proposal of Walter W. Arm-stead to pay for his subscription to shares of this *591 corporation by conveying, transferring and assigning to this corporation certain assets hereinbefore described, be and the same is hereby accepted. . . .”
Notwithstanding the resolution, nothing was indicated on the record that the conditions were agreed to or that the assignment was actually carried out. Walter W. Armstead was not certain that he made an assignment of the contract, for if he was certain, the action should have been instituted in the name of the assignee only, if in fact it was the real party in interest.
Pa., Rules of Civil Procedure 2002-3. Defendant has failed to raise the question whether plaintiffs can maintain this action. If individual plaintiff made a valid assignment to the corporate plaintiff then the individual plaintiff should not have been a party plaintiff. Since the right of the individual plaintiff to maintain the action was not raised by defendant it must be deemed waived. Rosengarten v. Budd, 44 D. & C. 139 (1941); Goldscheiter v. Heilman, 89 PLJ 89 (1940).
In addition to the question of whether the contract was assigned or assignable is the important question whether Armstead or his successor can restrain defendant from the pursuit of her livelihood. The pertinent parts of the contract with which we are concerned are paragraphs 2 and 3, which are as follows:
“2, The parties of the second part promise to work exclusively for the party of the first part and perform their service to the best of their ability and further that they will preserve in confidence the trade secrets, customer lists, job listings, and other business secrets that they will be entrusted with, develop or discover during the term of their employment.”
“3. The parties of the second part promise that they *592 will not individually or collectively enter, during the term of this agreement or for six months following the termination of this agreement, for any cause whatsoever, directly or indirectly, the employment agency business for either themselves or for any other person, persons or corporations within the geographical boundaries of Allegheny County, or for six months following the final order of court prohibiting such employment, whichever is later.”
The cardinal rule in construing written instruments is that a court should ascertain the intention of the parties at the time of making of the writing and giving effect thereto: Sunnyvale Westinghouse Salaried Employees’ Assoc. v. Westinghouse Electric Corp., 175 F. Supp. 685 (1959); Unit Vending Corp. v. Lacas, 410 Pa. 614 (1963); Herre Brothers, Inc. v. Rhoads, 208 Pa. Superior Ct. 357 (1966); Wilkes-Barre Twp. School District v. Corgan, 403 Pa. 383 (1961); United Refining Co. v. Jenkins, 410 Pa. 126 (1963). In order to ascertain the intention of the parties, the court may consider the obvious purpose and the subject matter; Smith-Faris Co. v. Jameson Memorial Hospital Assoc., 313 Pa. 254 (1933); United Refining Co. v. Jenkins, supra.
Plaintiff by its complaint claims damages to its business in the matter of good will and the solicitation of prospective customers. The proof of plaintiff fell short of its contention. Plaintiff did not claim or prove defendant disclosed trade secrets and other business secrets to new employer. As a matter of fact, corporate plaintiff did not prove it had trade and other business secrets known to defendant, nor did corporate plaintiff allege or prove defendant took with her trade or business secrets or “lists” or “records” of her old employer to her new employer.
The Supreme Court in the case of Wexler v. Greenberg, 399 Pa. 569 (1960), at 576 said:
*593 “The principles outlining this area of the law are clear. A court of equity will protect an employer from the unlicensed disclosure or use of his trade secrets by an ex-employee provided the employee entered into an enforceable covenant restricting his use, Fralich v. Despar, 165 Pa. 24, 30 Atl. 521 (1894), or was bound to secrecy by virtue of a confidential relationship existing between the employer and employe, Pittsburgh Cut Wire Co. v. Sufrin, 350 Pa. 31, 38 A. 2d 33 (1944). Where, however, an employer has no legally protectable trade secret, an employee’s ‘aptitude, his skill, his dexterity, his manual and mental ability, and such other subjective knowledge as he obtains while in the course of his employment, are not the property of his employer and the right to use and expand these powers remains his property unless curtailed through some restricted covenant entered into with the employer’: Id. at 35. The employer thus has the burden of showing two things: (1) a legally protectable trade secret; and (2) a legal basis, either a covenant or a confidential relationship, upon which to predicate relief.”
It is evident from both the pleadings and proof that corporate plaintiff did not prove either of the things mentioned in Wexler v. Greenberg, supra, to entitle it to injunctive relief. Also see Morgan’s Home Equipment Corp. v. Martucci, 390 Pa. 618, 136 A. 2d 838 (1957); Macbeth-Evans Glass Co. v. Schnelbach, 239 Pa. 76, 86 Atl. 688 (1913). Cf. Pittsburgh Cut Wire Co. v. Sufrin, 350 Pa. 31, 38 A. 2d 33 (1944); Belmont Laboratories v. Heist, 300 Pa. 542, 151 Atl. 15 (1930); Pressed Steel Car Co. v. Standard Steel Car Co., 210 Pa. 464, 60 Atl. 4 (1904). For authority in other jurisdictions, see Witherow Steel Corp. v. Donner Steel Co., 31 F. 2d 157 (W.D. N.Y. 1919); Philadelphia Extracting Co. v. Keystone Extracting Co., 176 Fed. 830 (E.D. Pa. 1910); Junker v. Plum *594 mer, 320 Mass. 76, 67 N.E. 2d 667 (1946); Aronson v. Orlov, 228 Mass. 1, 116 N.E. 951 (1917); Cincinnati Bell Foundry v. Dodds, 10 Ohio Dec. Reprint 154 (1887); Colonial Laundries v. Henry, 48 R.I. 332, 138 Atl. 47 (1927); cases collected in Annot., 165 A.L.R. 1453; cases cited at note 8, infra.
On the other hand, defendant contended and proved that her new employer Anderson Employment Agency was not engaged in the same kind of employment agency as corporate plaintiff and was not competitive to corporate plaintiff. Thus, the problem presented to this court is whether defendant should be or could be restrained from earning a livelihood in the employment agency field.
We, therefore, conclude that defendant did not disclose trade secrets, business secrets, trade lists or any confidential information to her new employer.
Defendant did have knowledge in her head. No one contends that the knowledge defendant had in her head was acquired from either the individual or corporate employer, plaintiff herein. The interesting question that presents itself to this court, is it necessary or required that a departing employe wipe clean the slate of his memory?
This court fully recognizes that this case and similar cases are of great social and industrial significance. Involved in suits of this class are questions that trouble employers as well as this judge and judges of our appellate courts. What legal rights does an employer have to keep a former employe from using or disclosing the knowledge he acquired whether or not that knowledge can be labeled a trade secret. What legal risks does an employer incur in hiring one who has another company’s knowledge in his head?
As the court said in Wexler v. Greenberg, supra, at page 579:
*595 “On the other hand, any form of post-employment restraint reduces the economic mobility of employees and limits their personal freedom to pursue a preferred course of livelihood.”
See generally, Carpenter, Validity of Contracts Not to Compete, 76 U. Pa. L. Rev. 244 (1928); Blake, Employees’ Agreements Not to Compete, 73 Harv. L. Rev. 625 (1960).
This court finds the individual plaintiff has failed to prove the contract was assignable to the corporate plaintiff, that even if the contract was assignable, plaintiffs failed to prove that defendant violated any of the terms of the contract by revealing any trade or business secrets. Defendant has not pursued any relief for an accounting or the return of $125 which she claims is due her by her counter-claim. Accordingly this court will deny defendant any relief for accounting or the return of any money.
We will conclude this discussion by quoting from II Chronicles 15:7 “Be ye strong therefore, and let not your hands be weak: for your work shall be rewarded.” Accordingly, this court will enter an appropriate decree denying plaintiff’s injunctive relief. Since the foregoing opinion discusses the issues involved as well as the evidence and the law involved as provided in Pa. R.C.P. 1517, this court will not make separate findings of fact and conclusions of law.
DECREE NISI
And now, to wit, January 28, 1971, it is hereby ordered and decreed the prayer of plaintiffs for enjoining defendant from employment by an employment agency other than by plaintiffs is hereby denied, plaintiffs are hereby denied damages and defendant is not entitled to an accounting or damages.