439 A.2d 821

**Arlene DURANT, Appellant,**

v.

**Mike DURANT and Bill Durant.**

Superior Court of Pennsylvania.

Submitted Nov. 16, 1979.

Filed Jan. 8, 1982.

Petition for Allowance of Appeal Denied June 4, 1982.

Simon B. John, Uniontown, for appellant.

L. D. McDaniel, Uniontown, for appellees.

Before PRICE, CAVANAUGH and WATKINS, JJ.

WATKINS, Judge:

This civil action comes to us on appeal from the Court of Common Pleas of Fayette County and involves the appellant Arlene Durant's appeal from an order of the court below dated December 11, 1978 which order dismissed appellant's exceptions to the Order of the Court of August 10, 1978 which order had dismissed appellant's Complaint in Equity initiated against the appellees.

On March 21, 1978 the appellant filed her Complaint against her husband, Mike Durant, and his brother, Bill Durant, requesting the court to set aside a transfer of real estate by which Mike Durant transferred two parcels of land situated in South Union Township, Fayette County, Pennsylvania, to his brother, Bill Durant. The deed by which the transfer was accomplished was dated February 1, 1977 and was recorded on October 13, 1977 in the Recorder of Deeds Office of Fayette County. The consideration was $10,000. The real estate contained thereon a frame dwelling used as a tavern. The appellant claims that the transfer constituted a fraud upon her, was made for the purpose of divesting her of her marital interest in the property and violated a "Treaty of Marriage" between appellant and her husband. The appellant and appellee, Mike Durant, were married on July 18, 1977.

The real estate in question was purchased in 1966 by the appellee Mike Durant and his brother, Louis Durant. In 1967 Louis Durant and his wife conveyed their interest in the property to Mike Durant. At that time Bill Durant, Mike's other brother, purchased new equipment for the tavern which Mike had operated on the premises. Mike Durant and the appellant then began dating. A child (a son) was born to them in November of 1973. In July of 1976 they began negotiations for the construction of an apartment above the tavern which was to serve as the home of

the couple and their son, as well as, three other children of appellant who were still living with her. On April 15, 1977 subsequent to the date of the aforesaid deed transferring the property from Mike Durant to Bill Durant, Mike and Bill executed a contract with Herman Huggins for the construction of the apartment. On August 18, 1977 the contract was paid in full. Sometime in January of 1978 Mike Durant left the second floor apartment which had served as the home of the couple and their child and moved downstairs into a bedroom behind the bar area of the building. On December 30, 1977 Bill Durant's attorney gave notice to Mike Durant and the appellant to vacate the premises due to their failure to pay rent to him. Appellant's Complaint in Equity followed. After a hearing the court below dismissed her Complaint which decision was upheld by the Court en banc after appellant had filed her exceptions. This appeal followed.

Appellant's position is that the evidence demonstrated that a "treaty of marriage" existed between her and Mike Durant, and that because Mike Durant never advised the appellant that he was in the process of transferring the real estate to his brother and did not disclose its transfer to her that the transfer operated as an actual fraud upon her the sole purpose of which was to divest her of her marital rights in the property.

There are three situations to be considered where a spouse or a prospective spouse has conveyed real or personal property without the joinder or consent of the other: (a) after marriage; (b) after engagement but before marriage; (c) before engagement to marry. *Smigell v. Brod*, 366 Pa. 612, 79 A.2d 411 (1951). In the instant case the deed conveying the real estate to Bill Durant was dated some six months prior to the marriage of the appellant to Mike Durant although it was not recorded until after their marriage. Since the appellant did not establish that the deed was "back-dated" it is presumed that it was executed on the date set forth therein, i.e. February 1, 1977. As such the conveyance, although unrecorded, took place six months prior to

the marriage. Thus, the first situation does not apply to our case.

The second situation applies to a conveyance made after the engagement but before marriage or during a "treaty of marriage". Mere proof of the conveyance of a gift, without the knowledge of the other party during this period does not constitute a prima facie case of fraudulent transfer. It is necessary for the party alleging it to prove actual fraud. *Kirk v. Kirk*, 340 Pa. 203, 16 A.2d 47 (1940); *Smigell v. Brod*, supra. Although appellant does argue that the transfer in the instant case was fraudulent the court below sitting in equity, in considering the evidence and acting as the fact-finder, held that "there is no evidence to support a finding that Mike Durant conveyed the tavern to Bill Durant with the intention of defrauding the plaintiff". There is ample evidence to support this conclusion. The deed stated a consideration of $10,000 and the testimony revealed that Bill Durant had invested money in the business. In addition, the appellant never said that she would not have married Mike Durant if she had known that he was not the owner of the tavern. As stated by the court below:

> "Apparently plaintiff assumed that defendant, Mike Durant, was the owner [of the tavern] because of his position as resident manager. There is no evidence, however, that plaintiff ever attempted to verify this assumption. It is probably true that plaintiff believed Mike Durant was the owner of the tavern, but it does not appear that this belief was induced by the actions of Mike Durant.

> "Thus, plaintiff cannot maintain that she has been harmed by the alleged deception and it is difficult to see how she can recover when she has suffered no damage."

Another problem is that it is not clear when the parties became engaged. The parties had been dating for seven years, prior to their marriage but they were never formally engaged. Although appellant testified that she and Mike Durant decided to get married "probably in July of 1976" the record also reveals that they had discussed marriage at other times during their relationship as well, particularly in

1973 when their child was born. Thus, even though a formal engagement is not required for a treaty of marriage to exist, the fact that there was no apparent formal engagement renders appellant's burden more difficult. This is so because a conveyance made by a spouse before the engagement, the third situation discussed in *Smigell*, supra, may not be set aside by the other spouse. Where there is no formal engagement it makes it more difficult for a fact-finder to hold that a conveyance was made during a "treaty of marriage".

In order for a spouse to set aside a conveyance made by the other spouse he or she must establish: (1) that the conveyance was made after the marriage contract; and (2) that the conveyance constituted actual fraud upon him or her. *Patton v. Patton*, 351 Pa. 6, 39 A.2d 921 (1944). Even if we assume the existence of a "treaty of marriage" in this case, i.e. that the parties were engaged prior to February 1, 1977, we must still affirm the decision of the court below because the appellant has not proven actual fraud.

Appellant urges us to alter the present state of the law in this matter. However, the policy interest to be served in providing for the free alienation of property, unencumbered by potential claims of potential spouses of the grantor, dictates otherwise.

Order affirmed.